# THE NEW YORK LIFE INSURANCE COMPANY, *vs.* GEORGE W. FLACK, Trustee of MARY E. NESBITT.

By the terms of a life insurance policy, the company agreed with the "assured, his executors, administrators and *assigns*," to pay the amount of the policy to the "*legal representatives*" of the insured, after due notice and proof of death, and at the bottom of the policy were these words: "N. B. If *assigned*, notice to be given the company." HELD:

That the provision to pay to the "*legal representatives*," was designed to apply only to a case where the party died without having previously assigned, and is not to be construed as, in any sense, limiting the power of assignment.

The reasons which require the assent of the underwriters as indispensable to the validity of assignments of fire policies, do not apply in cases of insurance upon human life.

Where no particular time is specified within which notice of assignment is to be given to the company, two days is sufficiently early, though after the death of the assured.

Delivery of the assignment of an insurance policy by the assignor to the attorney and representative of the assignee, is sufficient delivery to vest the title in the assignee, and is good against all except the creditors of the assignor.

An insurance policy is but a *chose in action* for the payment of money, and therefore assignable under the act of 1829, ch. 51; all contracts for the payment of money, whether express or implied, are within the purview of that act.

Where several instructions are asked, and some are granted and others rejected, if those granted cover the whole ground, the judgment will not be reversed, though some of those rejected were proper to be granted.

Two prayers were granted which told the jury the plaintiff could not recover, if they found the assured's declaration "*in any material respect untrue*," or

that he had made a "*prior proposal to another company.*" A third, that plaintiff could not recover if the jury found certain stated facts relative to an application by the assured to another company, and his examination and rejection, and that these facts were "*material to be disclosed,*" was rejected. HELD:

That the granting of the first two gave the company all the advantage to which it was entitled, or which was proposed by the third prayer, and the judgment ought not to be reversed on account of the rejection of the latter.

A prayer that the plaintiff could not recover, if the jury found that the assured, at the time of his application, was predisposed to dyspepsia, to such a degree as seriously to affect his health and "*produce bodily infirmity,*" as a distinct proposition, ought to have been granted, but the company having had the benefit of it by the granting of other prayers, its rejection is no cause of reversal.

APPEAL from Baltimore county court.

This was an action of *assumpsit*, instituted by the appellee, the plaintiff below, upon a policy of insurance for $5000 upon the life of Jonathan Nesbitt, underwritten by the appellant, the defendant below, and assigned by said Nesbitt to the appellee, in trust for the use of Mary E. Nesbitt. The declaration sets out the policy, its assignment, and the death of Nesbitt. The plea was *non assumpsit*.

*Exception.* The plaintiff offered the policy, the execution of which was admitted, and is dated 26th of October 1849; was for $5000, (the premium being 130, payable quarterly,) and contains, among others, provisions as follows: "And the said company do hereby promise and agree, to and with the said assured, his executors, administrators and assigns, well and truly to pay, or cause to be paid, the said sum insured to the said Jonathan Nesbitt's legal representatives, within sixty days after due notice and proof of his death." "And it is also understood and agreed to be the true intent and meaning hereof, that if the declaration made by the said J. Nesbitt, and bearing date the 20th of October 1849, and upon the faith of which this agreement is made, shall be found in any respect untrue, then and in such case this policy shall be null and void," &c. "N. B. If assigned, notice to be given the company."

The plaintiff then offered the assignment prepared and exe-

New York Life Ins. Co., *vs.* Flack.

cuted on the 3rd of June, 1850, by which, "for certain good and sufficient reasons," Nesbitt assigned the policy to the plaintiff, "in trust for the sole and separate use of my wife, Mary E. Nesbitt, her executors," &c. And proved by William H. Young, Esq., who prepared and attested the same, and represented the plaintiff, the facts relative to its execution, delivery and notice thereof to defendant, stated in the opinion of this court. The notice was not served upon the defendant until the 5th of June, the day of, and after, Nesbitt's death.

The plaintiff further offered the proposal referred to in the policy, dated 20th of October 1849, in which, in answer to the ninth question, whether the party "had ever been seriously ill? if so, with what complaint, and who was the medical attendant?" the answer was "no." To the tenth, whether "subject or predisposed to any disease or bodily infirmity?" answer, "none;" to the twelfth, whether then "in good health?" answer, "yes;" to the fourteenth, whether the party had made "a proposal for insuring his life at any other office? if so, state whether it was accepted or declined?" answer, "no;" to the fifteenth, requesting him "to name the residence of his usual medical attendant, or, if he had none, of some other medical person to be referred to for information as to his health?" answer, "James Armitage, M. D.," (stating his residence,) "has known me eighteen years." Appended to this proposal were:—1st, a declaration by Nesbitt that he was then in good health, and ordinarily enjoyed good health, and "that in the above proposal I have not withheld any material circumstance or information, touching the past or present state of health or habits of life of myself, with which the company ought to be made acquainted." "And I do hereby agree, that this declaration and the above proposal shall be the basis of the contract between me and the said company, and that if any fraudulent or untrue allegation be contained therein, or in the proposal," the policy to be void. 2nd, the certificate of Dr. Roberts, the medical examiner of defendant in Baltimore, who examined Nesbitt and gave it as his opinion

that the life was a fair one, and advised the risk. To the queries proposed in this certificate the answers were to the effect, that there was no manifest disease about Nesbitt, and his pulse was normal, usually about eighty; and to the query "whether previous disease or mechanical injury;" the answer is, "has occasional attacks of dyspepsia." 3rd, a letter written by the agent of defendant to Dr. Smith, propounding certain queries as to the health of Nesbitt, answered to the effect, that Smith had known Nesbitt about ten years, he was temperate, very active, had never, to Smith's knowledge, been afflicted with any disease tending to shorten life, or any serious disease or mental derangement, Smith then believed him in perfect health and thought his life safely insurable, and to the question, whether he "esteemed him a healthy man and free from any circumstances tending to shorten life?" the answer is, "I think he has dyspepsia slightly." 4th, a similar letter to Dr. Armitage, and answered to the effect that he had known Nesbitt fifteen or sixteen years, had seen him after and prescribed for him; that the only derangement with which he had been troubled was a functional one of the stomach, that he believed him in good health, and was aware of no peculiar circumstances tending to shorten life.

The plaintiff then proved by said Dr. Armitage, that he was a practising physician in Baltimore, had known Nesbitt for many years, but never attended him professionally till June 1849, but sometime prior, in the spring of that year, had examined his lungs and found them perfectly sound. That in June 1849, Nesbitt had a sharp attack, and was seriously ill, being confined about ten days, and took much active medicine, but recovered and was quite well in August, when he called on witness to examine him, stating that an agent of an insurance company had requested him to insure his life. That witness advised against it, stating that though he considered him quite well, there might be some cavilling about it, as he had been recently sick. That in October 1849, Nesbitt again called, when witness filled up the substantial parts of the proposal, above referred to, and believed him as much

entitled to insurance as any one. That after the proposal had been submitted, witness received a letter from Dr. Bogart, the medical examiner of defendant in New York, which was produced, inquiring whether Nesbitt's dyspeptic symptoms were continuous or occasional attacks, and whether the disease appeared to be incurable? to which witness replied by letter, (also produced,) to the effect that Nesbitt had suffered from a functional stomach derangement, but not attended at any time with organic lesion; that he heard nothing more of Nesbitt until the 10th of December 1849, when he found him indisposed, and thinks his disease arose from cold and from close application to business; he was suffering from derangement of the digestive organs, producing an involvement of the stomach, liver and bowels. He suffered very much, but got up again about Christmas, and was convalescent. He was attacked again about the first week in January, but grew better and was improving until April, when he became quite helpless, and from his broken down condition dropsy intervened, and he continued in this state until his death. In reference to his letter the witness states, he intended to restrict his answer to the time of his professional attendance upon Nesbitt. The witness, on his cross-examination, stated, that he understood from Nesbitt that Dr. Miller had formerly been his medical adviser, and had attended him several years before in an attack of pleurisy. Witness did not fill up any proposal for Nesbitt in August 1849, but understood from him that one Lewis, agent for some company, had called on him, and that he, Nesbitt, had called on Dr. Collins to be examined, who told him that his pulse was two or three beats higher than his company would take. He considered his disease a functional derangement of the stomach, not organic; that such a long continued functional derangement would turn into an organic one; that an organ once diseased has proclivity to disease again; that he does not consider the disease, after 10th December 1849, to have been entirely functional, the cold and exposure brought on some organic derangement,

but Nesbitt did not die of any disease in his system at the time of his application to defendant.

The defendant then proved by numerous witnesses, who had known Nesbitt for many years, that he was a delicate man, frequently attacked by sickness; that he had a severe spell of sickness in the spring of 1846, during which he was attended by Dr. Miller, was very delicate, fell behind in his work and excused himself on the plea of bad health, said he was suffering with dyspepsia, complained very much of it; that the witnesses did not consider him in good health; that Dr. Knight attended him and prescribed for him several times in the year 1849.

The defendant then proved by Milo Lewis, that in August 1849, he was agent for an insurance company in New Jersey, and applied to Nesbitt to propose for insurance in that company; that Nesbitt told him he did not know that he could obtain a policy, and stated that he had dyspepsia. Witness told him he could try, and furnished him with a blank proposal, which Nesbitt filled up, and Dr. Collins, the company's medical examiner in Baltimore, called upon Nesbitt and examined him, and told witness that he found Nesbitt's pulse two or three beats higher than the company would take, and he could not recommend *the life*, and suggested that the papers be not sent on to the company, or he be required to pass any opinion on *the life*, as it might affect Nesbitt on applying to another company. The application was filled up by Nesbitt and handed to witness. If Dr. Collins had advised the risk, the proposal would have been forwarded and the policy issued. But the proposal was never sent on. Nesbitt inquired of witness whether it would be considered as an application? and witness told him it would not. Witness delivered him back the proposal, which was filled up for $5000.

By Dr. Collins, that he keeps a record of all persons passed by him, but none of those who are rejected, and he has no memorandum of having passed Nesbitt. By Dr. Buckler, that he was called to see Nesbitt a few days before his death, but knew nothing of his previous condition; that long con-

tinued dyspepsia for several years, might and probably would, in the case of a delicate person, impair health, though primarily occasioned by a mere functional derangement of the stomach. By Dr. Roberts, that he examined Nesbitt, and filled up the certificate offered in evidence; he remembers to have asked Nesbitt a number of questions, and the answer, "has occasional attacks of dyspepsia," are the very words of Nesbitt, in answer to questions put to him by witness.

The defendant then offered nine prayers. The first and second are set out in the opinion of this court.

3. If the jury find that Nesbitt was seriously ill in June 1849, and was attended by Dr. Armitage, as his medical attendant, and during such illness took much medicine; and in the spring of 1846, was also seriously and dangerously ill, and was attended by Dr. Miller, as his medical attendant; and that the knowledge of these several illnesses were material facts to be stated to the defendant, on his application for insurance, then plaintiff is not entitled to recover.

The fourth and fifth are set out in the opinion.

6. If they find that Dr. Armitage had not attended Nesbitt as his medical attendant, prior to June 1849, and that previously Dr. Miller was for some years his usual medical attendant, and that Dr. Knight occasionally prescribed for him in 1849; and that these facts were material to be made known to the defendant, then plaintiff is not entitled to recover.

7. If they find that the assignment, dated June 3rd 1850, was not in fact notified to defendant or its agent, until after Nesbitt's death, then plaintiff is not entitled to recover.

8. That plaintiff is not entitled to maintain an action in his own name, by virtue of said assignment.

The ninth is set out in the opinion.

The court, (FRICK, C. J.,) granted the first, third, fifth and ninth, but rejected the second, fourth, sixth, seventh and eighth prayers, to the rejection of each of which defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON, MASON and TUCK, J.

*Wm. Schley* for the appellant.

1st. The second prayer was based on the evidence as to the application made to Milo Lewis for insurance, and the non-disclosure to the appellant of such application, and of its rejection, and the court was asked to say, that plaintiff could not recover if those facts were found, and if the further fact was found by the jury, that the occurrence was *a material fact that ought to have been made known to the appellant.* In matters of insurance the purest good faith is required; it is a contract *uberrimœ fidei.* 15 *Eng. C. L. Rep.*, 306, 308, *Lindenau vs. Desborough.* The word "*untrue,*" in the policy, does not necessarily imply a fraud. 2 *Crompton and Meeson,* 348, *Duckett vs. Williams.* The fact that a party had been insured in another office was held to be material in 1 *Meeson and Welsby,* 32, *Wainwright vs. Bland.* The fact that a fire had occurred in an adjoining building was also held material in 1 *Eng. C. L. Rep.*, 406, *Bufe vs. Turner.* See also 11 *Eng. C. L. Rep.*, 418. 14 *Do.*, 343, 346; and 41 *Do.*, 159. There is a marked distinction between this prayer and the 9th, which was granted; the latter is based on the idea of an *actual proposal,* whereas this groups the facts together as they existed, and says, that although they did not go so far as an actual application, yet if believed by the jury to be material, constitute a valid defence. The materiality of the fact is, by all the cases, a question for the jury.

2nd. The fourth prayer had reference to the tenth interrogatory, and the answer to the same, and the abundant evidence tending to show the long continuance of the disease of dyspepsia, and the medical evidence, that although primarily occasioned by a mere functional derangement, it might and probably would, in the case of a delicate person, (such as Nesbitt was shown to have been,) impair the patient's health. He ought to have disclosed these facts in relation to his health.

One single act of *spilling of blood* was held material to be stated in 14 *Meeson and Welsby*, 95, *Geach vs. Ingall.*

3rd. The sixth prayer was framed with reference to the character of the answer to the 15th question. That answer was calculated to leave the impression that Dr. Armitage had been his only medical adviser, at least for the last several years. If the fact had been announced, that Dr. Miller and Dr. Knight had both attended him recently, an opportunity would have been afforded for further inquiries by the medical examiners, as to the dyspeptic symptoms, &c. It will be seen that the prayer carefully includes, as a part of the hypothesis, that the jury should find the fact to be *material*. The cases all show that the party must disclose the medical adviser. 15 *Eng. C. L.*, 518, 521, *Everett vs. Desborough.* 13 *Do.*, 341, *Morrison vs. Muspratt.* 3 *Meeson and Welsby*, 518, *Huckman vs. Fernie.*

4th. The seventh and eighth prayers relate to the validity of the assignment. Notice of the fact of the assignment is made by the policy a condition precedent to its perfection, and such notice, *after the death* of the assignee was not sufficient. By the terms of the policy, *the payment* is to be made after the death of the assured, to his *personal representatives*, who are therefore the parties to sue. 5 *G. & J.*, 483, *Hunter vs. Bryson.* 6 *G. & J.*, 230, *State vs. Bank of Maryland.* 2 *Bland*, 41, *Welch vs. Stewart.* 3 *Do.*, 498, *Port vs. Mackall.* This case is not embraced by the act of 1829, ch. 51, and the assignment is in violation of the testamentary laws of the State. 9 *G. & J.*, 98, *Wareham vs. Sellers.* 2 *G. & J.*, 217, *Pennington vs. Gittings.* 4 *Clarke and Finnelly*, 382, *Scott vs. Jones.* 3 *Mylne and Craig*, 500, *Freake vs. Cranefeldt.* All such assignments are testamentary. 3 *Story's Rep.*, 764, *Grattan vs. Appleton.* Again, delivery by the assignor and acceptance by the assignee were necessary to its validity. The proof does not establish either fact.

*Wm. H. Young* and *Charles H. Pitts*, for the appellee, contended.

1st. The prayers granted by the court cover the whole

ground opened by the appellant's prayers, except the seventh and eighth, and placed the whole case, so far as the right to recover rested upon the declarations and information made and given to the company, fully and fairly before the jury, and this court will not reverse the judgment though some of the rejected prayers may be correct. 13 *Pet.*, 191, *Stockton vs. Saltonstall.* 9 *G. & J.*, 439, *Union Bank vs. Planters' Bank.* 3 *Gill*, 459, *Mutual Safety Ins. Co., vs. Cohen.*

2nd. As to the second prayer: A fact to be disclosed by an insured, must be a fact material in itself, as considered in its own nature and connected with the real nature of the risk, and facts, immaterial in themselves, can only be made material by being inquired of, and only to the extent of such inquiry. A fact to be material must be material in itself as tending to enhance the risk. 2 *Duer on Ins.*, 35, 188, 396, 522, 580. 4 *Mason*, 74, *Ruggles vs. General Ins. Co.* 3 *Wash. C. C. Rep.*, 156, *Clason vs. Smith.* The nature of the facts, whether material or not, is a question for the court, and the effect of the facts a question for the jury. *Marshall on Ins.*, 467. The facts set forth in this prayer were not material in themselves as tending to enhance the risk. An intention to apply with an intent to prosecute it to an insurance, is not a matter material in itself. 15 *Pick.*, 310, *Fiske vs. N. E. Marine Ins. Co.* And the materiality of the fact must be proved by the company. 12 *Wendell*, 507, 515, *Tyler vs. Ætna Fire Ins. Co.* See also 3 *Burr*, 1905, *Carter vs. Boehm;* and 4 *East.*, 590, *Haywood vs. Rogers.* All that good faith requires of the party is simply to state the condition of his health *at the time* the insurance is made. The peril insured against is the *death* of the party, and if the fact disclosed does not affect the continuance of life it cannot avoid the policy, unless he was interrogated as to it, and he was only asked to state whether he had made a *proposal* to any other company. The cases relied on and cited on the other side are all cases where concealment was made under a direct inquiry as to information on the subject. Fraud is not to be presumed, and though it involve proof of a negative, it must be proved. 15 *Pick.*, 310. Again, this

prayer is defective in not leaving to the jury the question, whether the facts set out in it constituted a proposal?

3rd. The fourth prayer is defective for two reason:—1st, it does not leave to the jury to find whether there was any concealment of material facts under question nine, upon which it is based, but directs them to find for defendant, if the facts be true, whether concealed or disclosed. It is not necessary that the party should be free from the seeds of disease. 2 *Marshall on Ins.*, 769, 770. 1 *Wm. Blackstone's Rep.*, 312, *Ross vs. Bradshaw.* Besides the fifth prayer was granted, which distinctly puts the question to the jury, whether the life was a good one or not? 2nd. This prayer omits facts given in evidence, essential to raise the question upon which it is based, and this is a fatal objection to it. 7 *Gill*, 233, *Beall vs. Beall.* 1 *Gill*, 222, *Leopard vs. Ches. & Ohio Canal Co.* 7 *G. & J.*, 20, *Cole vs. Hebb.* 1 *H. & G.*, 308, *McEldery vs. Flannigan.* 4 *H. & J.*, 507, *Burt vs. Gwinn.* 7 *H. & J.*, 279, *Riggin vs. Patapsco Ins. Co.* 3 *G. & J.*, 450, *Bosley vs. Ches. Ins. Co.* 6 *G. & J.*, 386, *Hall vs. Hall.*

4th. As to the 6th prayer which is based on the 15th question: The materiality of the answer is circumscribed by the question; and *good faith* only required him to disclose his usual medical attendant, and doing this he met the scope, object and intention of the inquiry. 2 *Duer on Ins.*, 389, 390, 396. The party. is only bound to answer the question as put. 3 *Meeson and Welsby*, 518. 14 *Penn.*, 393, *Satterthwaite vs. Mutual Beneficial Ins. Co.*

5th. As to the assignment:—1st. The delivery of the policy and assignment to Young, as attorney for the appellee, was a sufficient delivery. 2nd. The notice was given in time. The object of it was not to protect the company, but simply to show to whom the company were to pay the money. There is no time fixed at which this notice is to be given, and it was given two days after the execution of the assignment. The policy does not require it to be given in the lifetime of the insured, or by him or his assignee. 3rd. A policy of insurance is a *chose in action*, and assignable under the act of

1829, ch. 51.    1 *Md. Ch. Decisions*, 34, *Harrison vs. McConkey.*  1 *Gill*, 41, *Gordon vs. Downey.*    4 *Gill*, 221, *Crawford vs. Brooke.*  2 *Marshall on Ins.*, 800.   There are no creditors interposing their claims, and no party setting up a claim except the plaintiff.

LE GRAND, C. J., delivered the opinion of this court.

The action in this case was founded on a policy of insurance, underwritten by the appellant, on the 26th day of October 1849, being an insurance on the life of Jonathan Nesbitt. On the fifth of June 1850 he died, after having, on the 3rd of the same month, assigned all interest in the policy to the appellee, "for the sole and separate use of his wife, Mary E. Nesbitt, her executors, administrators and assigns." Notice of the assignment was not given to the company until after the death of Nesbitt, but on the day when that event took place.

The right of the plaintiff to recover in this action is denied on several grounds.   Two of them relate to the assignment made on the 3rd of June, and the seventh and eighth prayers are designed to present the questions growing out of it.    The eighth denies the right of the plaintiff below to recover in his own name by virtue of the assignment; and the seventh asserts, that no recovery can be had if the jury should find the company was not notified of the assignment until after the death of Nesbitt.    If either of these propositions be true, then whatever else there may be in it, there is not sufficient in the case to give the plaintiff a proper standing in court.

The eighth prayer is founded upon two grounds: first, that the policy provides the sum of money secured by it shall, in the event of the death of Nesbitt, be paid to his "legal representatives;" and second, that it was in violation of the testamentary system of the State.

Although it be true that there is a provision in the policy binding the company to pay the legal representatives of the insured, yet this obligation must be taken in connection with other portions of the same instrument, otherwise the true meaning of the whole would not be ascertained.   The contract is with the "assured, his executors, administrators and *assigns*,"

and at the bottom of the policy are these words: "N. B. If assigned, notice to be given the company."

Taking into consideration the whole instrument our opinion is, that the provision to pay to the legal representatives was designed to apply only to a case where the assured died without having previously assigned the policy, and not to be construed as, in any sense, limiting the power of the party insured to assign.   The *nota bene*, at the close of the policy, was evidently inserted for the protection of the company.   Knowledge of the assignment could only be important to it in one view: to prevent the possibility of its being compelled to pay both the assignee and the legal representatives of the insured.   In fire policies there is, generally, a condition, that any assignment will be void without the assent of the underwriters be first obtained.   The reason of this is obvious.   A fire policy may be underwritten for one person when it would not be for another.   In all such cases, the character for *integrity* and *caution* of the party constitute important considerations.   While the character of one person would be a complete guaranty that he would not fire his own house or goods, the character of his assignee might furnish no such assurance, and therefore it is, that in fire policies the assent of the underwriters is indispensable to the validity of the assignment.   No such reason obtains in the case of an insurance on human life.

The witness, Wm. H. Young, Esq., testifies, that he prepared the assignment; and although the appellee was not present at the time, he had been previously informed of the intention to execute such an assignment, and that he agreed to act as trustee; that after the execution of the instrument it was delivered to witness, who placed it in a drawer in the house of Nesbitt, which was under the control of witness; that he prepared a notice of the fact of the assignment, to be delivered to the company, and was under the belief it had been delivered, until, on the day of the death of Nesbitt, he found such not to be the case, when he immediately caused the notice to be given.   We consider this a sufficient compliance with the requirement of the policy.   It does not specify any particular time within which the notice is to be given, and we think two

45      v.3

days sufficiently early, although after the death of the assured. The witness testifies he considered himself as representing the appellant. There is no pretence of fraud *in the assignment*, and we consider the delivery to Young a sufficient delivery to vest title in the assignee.

We consider the assignment as authorized by the act of 1829, chapter 51, the policy being but a *chose in action* for the payment of money. All contracts for the payment of money, whether express or implied, are within the purview of that act. *Crawford vs. Brooke,* 4 *Gill,* 214. *Gordon vs. Downey,* 1 *Gill,* 41. The delivery of the assignment to Young, as the representative of the appellee, was a complete and absolute surrender of all legal power and dominion over the policy, and as such, was good against all but the creditors of the assignor, and none such are before us, and for aught we can see, there were none. 2 *Gill and Johnson,* 208. 5 *Gill & Johns.,* 54. 1 *Md. Chancery Decisions,* 34. For these reasons, we are of opinion, the county court properly rejected the seventh and eighth prayers of the appellant.

The appellant offered, in all, nine prayers to the court below, some of which were granted and some rejected. We have said we concur with them in the propriety of the rejection of the seventh and eighth prayers. All the others were founded on the truthfulness or falsehood of the declaration of the insured, at the time he answered the interrogatories propounded to him by the company, and the evidence, *aliunde* his declaration, touching the condition of his health.

It appears from the evidence in the cause, that the deceased had been applied to by the agent of another insurance company, and, at his solicitation, underwent an examination by the physician, who declined reporting favorably on his case, because his pulse was two or three beats higher than his company would take, and who said he could not recommend the life, and suggested that the papers be not sent on to his company, (which was located in New Jersey;) and that he should not be required to pass an opinion on *the life,* as it might injure Mr. Nesbitt if he applied to another company. The application had been filled up and was ready to be sent on, but the

opinion of the physician prevented it. All persons applying for insurance by the appellant, are required to answer certain questions, and a failure to answer them honestly and correctly deprives them of all advantages derivable from the policy. The fourteenth interrogatory propounded to Nesbitt was in these words: "Has a proposal been made for insuring the life of said party, (Nesbitt,) at any other office? and if so, state whether it was accepted or declined?" To this question Nesbitt answered "No."

On the testimony the appellant, by its second prayer, asked the court—which it refused to do—to instruct the jury, if they should find from the evidence, that Nesbitt, prior to the application to the appellant, had filled up an application to another company, with intent to obtain a policy of insurance from said company, in case such application should be accepted; and that the applicant was examined by the medical examiner of said company, and that it was the purpose and intention of said Nesbitt to prosecute his application, in case he should be recommended by said medical examiner as a person proper to be insured by the company; and shall further find, that said Jonathan Nesbitt was rejected on such examination by said Dr. Collins, and the said Nesbitt thereupon withdrew his papers from the agent of the company; and shall further find, that on his application to the appellant for insurance he did not disclose the fact, that he had been so examined and rejected, and that it was a material fact that ought to have been made known to the appellant, then the appellee was not entitled to recover.

Whether the facts set out in the prayer amounted to a *proposal* it is not important, in the view we have of the case, to inquire. The prayer rests entirely on the falsehood of the declaration of Nesbitt, and the court, by giving the first and ninth prayers offered by the appellant, clearly put the question before the jury, and gave to the company all the advantage to which it was entitled. The first instruction informed the jury, that if they should find "the declaration made by the said Jonathan Nesbitt, bearing date the 20th day of October 1849, was in *any material* respect *untrue*, then the plaintiff is (was) not entitled to recover in this case." And the ninth prayer

told them if they should find from the evidence, "that prior to the making of the proposal of the 20th day of October 1849, a proposal had been made in August 1849 by the said Jonathan Nesbitt, for the insurance of his life for $5000, at the Mutual Benefit Insurance Company of New Jersey, then the plaintiff" was not entitled to recover.

These two instructions clearly submitted the truth or falsity of the answer of Nesbitt to the jury. The first distinctly told them, if they should find his declaration in *any* material respect untrue, the appellant was not entitled to recover; and the ninth as clearly informed them, if they should find he had made a prior proposal to another company, that there could be no recovery. In the case of the *Mutual Safety Insurance Company vs. Cohen*, 3 *Gill*, 482, the court say, "some of the instructions which were asked for and refused might have been granted; but it is believed, that the instruction given covers the whole ground, and therefore, for the rejection of them, the judgment ought not to be reversed." See, also, 13 *Peters*, 191. We do not, therefore, deem it necessary to inquire, whether the second prayer of the appellant, if it were the only prayer in the case, ought to have been granted? It is clear, all the advantage it proposed to the company was secured by the first and ninth prayers which were granted by the court, and therefore, in the language of the court in 3 *Gill*, for its rejection the judgment ought not to be reversed.

For the same reasons, we are of opinion that the county court ought not to be reversed, because of its rejection of the fourth and sixth prayers. It appeared from the evidence, that Nesbitt was liable to attacks of dyspepsia, and that he had been attended at different periods by different physicians. The fourth prayer asked the court to instruct the jury, that if they should find that Nesbitt, "at the time of his application, was predisposed to the disease of dyspepsia to such a degree as seriously to affect his health, *and to such a degree as to produce bodily infirmity*," then the plaintiff was not entitled to recover. This prayer, as a distinct proposition, we are of opinion ought to have been granted, for we cannot see how a person can be sound and healthy who is predisposed to

dyspepsia to such a degree as to produce bodily infirmity; but the company had the benefit of this instruction in the first and fifth, which were granted.   The latter told the jury, if they should find he "was not in good health at the time of the application" there could be no recovery; and the first said, if his answers were erroneous in *any material* respect, the action must be defeated.   The tenth interrogatory propounded to Nesbitt was in these words: "Is the party subject or predisposed to any disease or bodily infirmity."   If, therefore, he was, in point of fact, predisposed to dyspepsia and the proof showed it, the first instruction told the jury the plaintiff was not entitled to recover.   Whatever may be our views of the *force* of the testimony, it is not for us to correct the verdict of the jury; that, more properly, was for the court below, by granting a new trial, if they believed the evidence called for a different finding.   The foregoing reasons dispose, also, of the sixth prayer.

*Judgment affirmed.*

Eccleston, J., dissented.