McKinney, J.,
delivered the opinion of the Court.
This was a hill of interpleader. The facts are these: On the 2d of April, 1849, a policy of insurance on the life of Thomas Hamilton, for the term of life, in the amount of $5000 00, in consideration of the annual premium of $141 05, underwriten by the complainant, an incorporated company, organized on the principle of mutual assurance, was issued to said Hamilton. By the express terms of the policy, the company agree, “to, and with the assured, his executors, administrators, and assigns, well and truly to pay, or cause to he paid, the said sum insured, to the assured, his executors, administrators, or assigns, within sixty days after due notice, and proof of the death of the said Thomas Hamilton.”
Shortly afterwards, the assured assigned and transferred the policy, by a writing under seal, made upon the margin of the policy, in the following words:
“ I hereby make over this policy of insurance on my life, to Adelaide Eliza Goram, a colored woman; and desire that, at my death, the amount, say five *271 thousand dollars, he paid to her. Witness my hand and seal, this 22d day' of August, 1849.
Thomas Hamilton, [l. s.]
Subsequently, on the 20th of February, 1850, this transfer was acknowledged by Hamilton, in the presence of an attesting witness, as appears by an endorsement on the face of the policy. There also appears on the face of the policy, the following written indorsement: “Pay as aboye. Hew Orleans,' 12th July, 1854. Thos. Hamilton.”
Thomas Hamilton, the assured, died on the 25th of' August, 1855. Shortly after his death, the defendant, as assignee of the policy, (who resides in Hew Orleans,) presented the same to the office, and demanded payment of the insurance money. The defendant, Andrew Hamilton, who took out letters of administration on the estate of the deceased, in Davidson county, Tennessee, also set up a _ claim to said sum of five thousand dollars, and demanded payment of the same from the office. :
To adjust these conflicting claims, and to have .it judicially determined who was entitled to the money, the company, for its own protection, brought this bill, to which both claimants are parties.
The defendant, Groram, states in her answer, and the 'statement is uncontroverted, that said policy was delivered to. her by the ' assured, “ on or about the date of said assignment, and has been ever since in her possession and custody.”
The defendant, Hamilton, as administrator, states in his answer, that the estate of the deceased will probably turn out to be insolvent, and that the siim in controversy will be required for the payment of debts. And *272 he seeks. to repel the claim of the other defendant on several grounds. Because, as is alleged, the assignment was made “without the knowledge or consent of the company,” and no notice thereof was given to the office, until after the death of the assured; and also, because, as he believes, the assignment was made without any consideration valid in law; and was, therefore, inoperative, at least as against creditors of the estate of the assured; and likewise, because he does not admit, that the defendant, Goram, is a free person, so as to be capable in law, of taking any interest under the assignment. The contest in the present case, it will he observed, is alone between the personal representative, and the assignee of the assured. And it is further to be noticed, that neither in the charter of incorporation, nor by any by-law of the company, nor by anything son the face of the policy, is it required, that notice of ithe assignment of the policy shall be given to the ',office.
! The question, as to the necessity of the knowledge and assent of the underwriters, to the assignment of a pohpy, is very different with reference to fire policies, from life and marine policies. The assent of the insurer to the assignment, in order to give it validity as against the office, in the case of a fire policy, is generally admitted; and notice of the assignment must therefore be given, or the assignee will not be entitled to demand the insurance money. The reason of this requirement in fire policies, is obvious. In such cases, the personal character of the assured, for integrity and prudence, is a most important consideration. In the language of the books,- there is infused into the contract of fire insu- *273 ranee, something of the nature of a choice of persons. The insurer might he quite willing to underwrite a policy for one person, but not for another of different character and habits. The known reputation of the assured might be an ample guaranty that he would not secretly destroy his own property, with a view to recover the insurance money, while that of the assignee might furnish no such assurance.
But no such reason exists in the case of an insurance on the life of an individual, nor in the case of a marine policy. And in the latter cases, the' assent of the insurer to the assignment of the policy, or notice of such assignment, is not' indispensable, in order to entitle the assignee of the policy to recover the money from the insurer. See Angelí on Insurance, sec. 199, 200. 3 Maryland R. 341, 353.
We are of opinion, therefore, that as between the insurer, and the assignee of a life policy, notice of the assignment is not required, to complete the right of the latter, to receive the insurance money from the former.
^tlpon principle, as it seems to us, the right of"^ the assignee must be held to be perfect in a ease like the present, by force of the assignment alone. Thisj must be so, if we are correct in the assumption, that by the transfer he becomes instantly invested with the legal interest in the policy, for if he takes nothing more than a mere equitable interest under the assignment, it will perhaps inevitably follow, that the debt still continued subject to the order and disposition of the assured, so far at least, as after his death, a payment to his personal representative, without notice of the *274 assignment, would protect the insurer from paying the money a second time to the assignee.
That the assured has an assignable interest, and that a life policy .is assignable, admits of no question. This is so; first, upon the general principle of law, applicable to this subject. See Angelí on Insurance, sec. 325. Secondly, it is so by the express stipulation of the contract. By the terms of this policy, the contract is with “the assured, his personal representatives and assigns;” and the promise in fact, and in law, is to pay the money to the present representative or assignee, as the case may be, within sixty days after due notice, and proof of the death of the person assured. And thirdly, we incline to the opinion, that a policy in the form of the present one, is assignable within the spirit of the act of 1801, ch. 6, sec. 54, so as to pass the legal interest in the policy, and the money to become due thereon, to the assignee, and entitle him to sue thereon in his own name. By this act, it is declared that upon all bonds, bills, or notes, for specific articles, or for the performance of any duty, suits may be brought, both in courts of law. and equity, in the names of the assignees. The policy before us, is not under seal. It is an agreement or promise, in writing, to pay to the personal representative, or assignee of the person assured, the sum of five thousand dollars, within sixty days after the happening of a certain event, namely, the death of the person to whom the policy issued. This is not a note, in the technical sense, but we think it is a note for the performance of a duty, in the enlarged sense, in which the word note is used in the statute. It is true, that the ultimate liability of the company to pay *275 the insurance money, is subject to the contingencies contemplated and provided for in the contract as set forth in the policy; and something is to he done by the assured, or by his assignee, from time to time, namely, the payment of the annual premiums, in order to keep the policy in force. But, upon the death of the assured, all contingency is at an end, and the payment of the money becomes an absolute, unconditional obligation on the part of the insurer, and the policy becomes invested with all the essential properties of a promissory note, or the legal evidence of debt. And if we are right in assuming, as we have, that the legal effect of the assignment of the policy was to invest the assignee with the legal interest in the policy, then the conclusion is demonstrated, that he alone as against the personal representative, creditors, and all other persons, is entitled to receive the money due on the policy. In this view, the assignee of the policy stands upon the same footing as the assignee of a bond, bill, or note, and like them, it may be assigned without the knowledge and against the will of the debtor. In this view, there is no more force in the argument, that notice of the assignment is necessary to protect the underwriter from the hazard of paying the money twice, than that such notice is necessary to protect the title of the assignee, by taking the policy out of the possession, and disposition of the person assured.
We have seen that the assignment, ipso facto, affects the latter object, by divesting the assured of all interest in, and power of disposition over the policy. And as regards the underwriter, no such hazard can be supposed to exist. He cannot be required to pay the in- *276 surancé money, without the production of the policy, if in existence; or, if lost, without sufficient proof of that fact. Neither can he he required to pay, without sufficient proof, that the person demanding payment, occupies the relation or character assumed by him; and that he is, by law, as the rightful assignee of the policy, or personal representative, entitled to receive the money. Such being the law, the underwriter is exposed to no risk, except such as may be the result of his own carelessness, against which the law entitles him to no protection.
We- have- been referred to several cases in the English books, for the purpose of showing, that as against the assignees in bankruptcy of the person assured, notice of the prior assignment of a life policy is necessary. These cases proceed upon the construction and effect of certain clauses of the bankrupt and insolvent debtors acts, which vest in the assignees all the property, including securities, such as policies of insurance, that may happen, with the consent and permission of the true owners, to be in the order and disposition of the persons falling under the operation of those statutes. These cases, of course, have but little application to the case before us. We have also been referred to the doctrine applicable to the assignment of equitable right's, and choses in action, as recognized by this Court in Clodfelter vs. Cox; 1 Sneed, 330, 339; according to which, in a contest between different assignees of the same equitable property, he will be preferred, who has first given notice of his assignment to the debtor. And consequently a second assignee of a chose in action, or incumbrance upon equitable property, without notice of *277 the prior assignment or incumbrance, by giving notice to the debtor, or trustees of. the property, will secure a preference over a prior assignee or incumbrance, who has neglected to give such notice; the title of the latter being incomplete for want of such notice. See also, 1 Story’s Eq., sec. 421, 6, note 2.
But this doctrine applies to the transfer of equitable interests, and consequently has no bearing upon assignments of negotiable instruments, or of instruments -which, though not negotiable by the law merchant, are made assignable by law, so as to pass the legal interest, and entitle the assignee to sue in his own name.
The second ground upon which the claim of the assignee is attempted to be resisted, is that the assignment was voluntary and without any consideration.
This objection cannot prevail. The view we have taken of the case, brings it to a contest, simply, be tween the office and the assignee of the policy. And without any intimation of an opinion upon the question, whether the insurer could avail himself of this objection as against the assignee of the policy, it is sufficient for the determination of the present case, that the assignment being under seal, a consideration is to be presumed, and there is no proof in the record to repel this presumption.
In the third place, it is said, that the defendant Adelaide, has failed to establish the fact, that she i§ a free woman; and, therefore, no decree can be made in her favor. Upon the state of the case, as presented by the pleadings, for there is no proof upon the point, the question of defendant’s freedom cannot properly be regarded as in issue. The bill, in one part of it, states *278 that the defendant “.claiming to he a free woman, presented the original policy ” to the office, and demanded payment of the money, &c. And in another part, it is stated, that the administrator denied her right, upon the ground, among others, that “ she was not a free woman capable of taking the fund.” No other reference is made to' the matter in any part of the bill. These incidental allusions to the status of the defendant, were scarcely sufficient, perhaps, to have called _ for an answer, touching her social condition; much less to haf.e put her upon proof in relation to it; yet she does answer as to this matter, and denying the right to raise any such question against her, she avers that she' is a free woman, capable in law, of taking and holding property, and of suing and being sued. And there being no proof upon this point, the objection must of course fall.
All the other objections urged against' the right of the assignee, resolve themselves into one or other of the grounds before noticed.
The decree will be affirmed.

Motion to reconsider the Clause on a New Point.

After the foregoing judgment in this case had been announced, it was ascertained that at the foot of the original policy, the following words were written:
“N. B. If assigned, notice to be given , the company.”
Which words having been omitted by the clerk, in the transcript furnished for this Court, and on which the cause was heard and decided, we are now asked to re *279 consider the case, in view of the supposed effect to which these words are entitled. If the contest here, were between the creditors of the assured and the assignee of the policy, we are not prepared to say whether or not these words introduced, as they are, not by way of condition in the body of the policy, but merely as a note, at the bottom, would affect the determination of the question. But, in the case before us, where the question is merely between the assignee and the office, the words referred to, can have no influence om the decision of the case. The requirement that the company should have notice of the assignment, could have had no other object, except the protection of the company. The only reason for such - notice would be, to secure'the company against the hazard of loss, from paying the money to the personal representative of the assured, and being compelled to pay a second time, to the assignee. What might have been the consequences to the assignee, if the money had been paid to the personal representative, or if it had been attached by the creditors before knowledge of'the assignment, on the part of the company, we need not stop to consider, as neither of these things occurred in the present case. And as the company sustained no possible injury for want of such notice, the omission cannot be set up as a defense against the right of the assignee to recover the money. Nor is any such ground assumed in the bill, in opposition to the right of the assignee. See 3 Maryland Rep., 341, cited above.
The judgment will remain unchanged.