ILLINOIS CENT. R. CO. (TURRILL v.). See Cases Nos. 14,270–14.272.

ILLINOIS CENT. R. CO. (UNITED STATES v.). See Case No. 15.437.

ILLINOIS CENT. R. CO. (WOODWARD v.). See Cases Nos. 18.006 and 18.007.

ILLINOIS CENT. RY. CO. (YORK MANUF'G CO. v.). See Case No. 18,143.

ILLINOIS MANUF'G CO. (ADAMS v.). See Case No. 54.

ILLINOIS MANUF'G CO. (DANE v.). See Case No. 3,558.

---

## Case No. 7,009.

ILLINOIS MASONS' BEN. SOC. v. BOOTH et al.

[12 Chi. Leg. News, 151; 9 Reporter, 165.[1]]

Circuit Court, N. D. Illinois. Nov. 24, 1879.

CONSTRUCTION OF POLICY—BILL OF INTERPLEADER.

This was a bill of interpleader filed by the insurer for the purpose of determining to whom

[1] [9 Reporter 165, contains only a partial report.]

the insurance money should be paid. The money was claimed by the widow of deceased, by his son, and by a foreign administrator. The court discusses the rights of the respective parties, but without deciding as to which one of them is entitled to the money, orders it to be paid to the foreign administrator on his giving adequate security to hold the same for the benefit of whom it may concern. Upon failure to give such security the court will order the society to hold the money until letters of administration are taken out in this state.

[This was a suit by the Illinois Masons' Benevolent Society against Adaliza Booth and others, representatives of Moses K. Booth, deceased.]

DRUMMOND, Circuit Judge. This is a bill of interpleader, filed by the plaintiff against various defendants, representing the estate of Moses K. Booth, for the purpose of determining to whom a certain sum of money, admitted by the plaintiff to be due to the estate, shall be paid. Booth was a member of the society during his life, and it issued to him a certain certificate, by which it agreed with him, his heirs, executors, administrators and assigns, that it would pay to his wife, naming her, or his legal representatives, a certain sum of money, to be ascertained in the mnaner pointed out in the certificate upon notice and evidence of Booth's death. After the certificate was given by the society, the wife of Booth died and he married again, and on November 1st, 1877, died, leaving a widow and one son born of the first marriage, both of whom are parties defendant in this case. The present administrator of the estate is a citizen of Colorado, and has taken out letters of administration there, Booth having died intestate. He is also a party defendant in this case. The son claims the whole of the money due from the plaintiff to the estate, as the sole heir of his father. The widow claims a part of the money as being entitled under the law of this state, to a certain proportion of the personal estate of her deceased husband, and the administrator claims the whole of it as the general representative of the estate, and as coming within the meaning of the clause in the certificate which declares that it is to be paid to the first wife by name, or to Booth's legal representative, the administrator insisting, she being dead, he is the legal representative of the estate. At the time of Booth's death, which was while he was a citizen of Colorado, he owed debts which the proceeds of his estate arising from other sources than this sum of money in controversy, would not discharge, and the payment of which will absorb what is due from the plaintiff; and the real question in this case is, substantially, whether the money due from the plaintiff should go to the son and widow, or to the administrator, to be distributed to the creditors of the estate. It is proper to say, that after the death of Booth's first wife, and after his second marriage, and only a few months be-

fore his death, he seems to have resolved to cause the certificate which he held to be made payable to his son, and wrote the society for the purpose of ascertaining whether or not the certificate could be changed so as to accomplish that in the event of his death. The society wrote him that it could be done, and if he desired it he should forward his certificate of membership. This is all we know of his purpose to make the claim due at his death payable to his son. He did not forward the certificate of membership, and as far as we know, he did nothing further to comply with the terms of the society, and no change was made in the certificate. Whether it was in consequence of a change of purpose, of course we are ignorant. There were payments made of the amounts due according to the terms of membership, from time to time, by one or more persons; but there is no satisfactory evidence that at the time of his death whatever had been paid had not been reimbursed by him, so that there does not seem to be any special equity arising from the fact of other persons having advanced money which was unpaid at the time of his death.

The questions in the case are: First, whether the court can assume that the true construction of the certificate is that the money due at the time of his death should be paid directly to his widow and to his son, in proportions as provided by the law of this state; or, whether the court will direct it all to be paid to the administrator as the general representative of the estate on such terms as that it shall be held by him and properly secured, so as to be distributed in conformity with an adjudication of a competent court of this state of the rights of the parties.

As to the first question, it seems clear that the son would not be entitled, even on the assumption made by his counsel, to the whole of the money due by the plaintiff to the estate. The certificate shows clearly, and such is the general scope of the policy of the society, that the object was to provide as well for the wife as for the children, or representatives of the husband, and the wife named in the certificate having died, and another having been taken, now the widow of Booth, it would seem as though the true purpose of the certificate and of the society would only be accomplished by regarding her rights as well as those of the child surviving, and so there could not be a payment of the whole amount to the son. And as the plaintiff is a corporation, acting under the law of this state, and as this contract was made in this state, it seems to be nothing more than fair that the courts of this state should determine what is the legal construction of this contract, and whether it is one which, under the facts of the case, would entitle the widow and the son, or the creditors of Booth in preference to them, to the payment of the amount due. In this

case the company agrees with Booth, his heirs, executors, administrators and assigns, to pay to Sarah M. Booth, his wife, or the legal representatives of Booth, the amount which may be due. Various cases have been cited, which, it is claimed, have a bearing on what is the true construction of this contract. In the case of Kentucky Masonic Mut. Ins. Co. v. Miller, 13 Bush, 489, the language of the contract was that the company would pay to the heirs of the deceased, a member of the company, the amount which might be due, or as he might direct in his will. He gave no directions in his will, and the question was, whether the amount should be paid to his widow, he having left no children, or to the administrator, to be distributed as a portion of his estate. The court decided that the money should be paid for the benefit of the widow, but the decision was made mainly on the ground that the laws of Kentucky in relation to the company, provided that the money should be paid for the benefit of the widow and children of the deceased member, and that the clear intent of the legislature was that it should not be a fund for the payment of debts. The decision, it will be seen therefore, was placed mainly on the ground of the special legislation of Kentucky applicable to the case. In the case of Loos v. John Hancock Mut. Life Ins. Co., 41 Mo. 538, the life policy provided that in case of the death of the insured the amount should be paid to his heirs or representatives, and the question raised in that case was, whether the language of the policy should be construed so as to make the money payable to the administrator or to his daughter who brought the suit against the company as sole heir, to recover the amount due on the policy. The court held that the plaintiff as the only child and sole heir of the insured, was entitled to the payment of the money, and that the use of the word representatives in the policy could not divest her title, or divert the money to another source.

In the case of Wason v. Colburn, 99 Mass. 342, where the language of an endowment policy was, that the company agreed with the assured to pay the sum named in the policy to him, or in case of his prior decease, to his heirs or representatives, the court held that the money was payable to his administrator and not to his son. The opinion of the court is very brief, and some stress seems to have been laid upon a particular statute of Massachusetts, referring to a case of a policy effected by one person on his own life or that of another, when made for the benefit of a third person, and which, when made, would entitle the person to the amount due on the policy against the creditors and representatives of the person effecting the same. Also some stress was laid upon the fact that it was an endowment policy, and was made primarily for the benefit of the assured himself. But it will be observed that the terms of the policy in this case were the same as those in the case from Missouri already cited. It was payable to the heirs or representatives of the assured. The case from Missouri was cited in the opinion of the court in Massachusetts, and some distinction is attempted between the two cases; and it is also stated that the term representative legally indicates administrator, but nothing is said about the word "heirs," as giving significance to the word representatives, and certainly ordinarily heirs do not mean administrators. These two cases seem to be somewhat in conflict with each other, and they are the only cases which have been cited having a special bearing upon the subject of controversy. In the case of Gauch v. St. Louis Mut. Life Ins. Co., 88 Ill. 251, the policy was for the benefit of and payable to the legal heirs and assigns of the assured. The assured bequeathed the policy to his children by his last will and testament, and died leaving a widow and children. The court held that the children were entitled to the entire amount called for by the policy, although the widow under the law of this state had renounced her right under the will, and elected to take her dower and legal share of the estate. In New York Life Ins. Co. v. Flack, 3 Md. 341, the agreement in the policy of life insurance was, to pay the amount to the legal representatives of the insured, with a memorandum that if an assignment was made notice was to be given to the company. It was held that the term legal representative was to apply only to a case where the party died without having previously assigned the policy.

The law is well settled that it is competent for a party, when he obtains a policy of insurance, to provide that the money shall be paid to any particular person, either by name or by description of the person; and the question in this case is, whether, by describing the person to whom the money was to be made payable as "his representative," it was the intention of the party that it should be paid to his widow, if he had one, or to his children, if any survived him, in preference to an administrator. Undoubtedly Booth could have provided by his will to whom the money should be payable, and unless the question of indebtedness should arise, the terms of the will would be conclusive upon the company. No will having been made in this case, and the first wife named in the contract having died, the question is whether by the term legal representative the contract means his wife or child, one or both, or the administrator. I have looked into the by-laws of the society to determine whether there is anything which shows what was the meaning of the clause in the certificate, and I must confess that the question is not made much clearer by the examination. The second article of the by-laws declares that the business and object of the society shall be to afford financial aid

and benefit to the widows, orphans and heirs or devisees of deceased members. There seems to be a limitation, and if that limitation were entirely consistent with the clause of the certificate, and if that were all there was in the by-laws, then we might derive some aid from them. The terms "widows, orphans, heirs and devisees," are the only terms used and the only persons described to whom the aid of the society was to be afforded. The eighth article of the by-laws declares that upon the death of a member of the first division the directors shall pay the amount due to the heirs or legal representatives of the deceased member. "Heirs," may or may not be "legal representatives." Sometimes they are, and sometimes they are not: Morehouse v. Phelps, 21 How. [62 U. S.] 294. The second section of the article declares in the same language, that upon the death of a member the society shall pay the amount to the heirs or legal representatives of such deceased member, and the first proviso uses the same language; but another proviso declares no money shall be paid to the heirs of any deceased member of the society until the assessments are made, leaving out the words, "or legal representatives.' In the amendment to the by-laws it is declared, "provided that no money shall be paid to the heirs of any deceased member of the society until the assessments shall have been made." Now, it will be recollected that the language used in the certificate is, that the society is to pay the money to the legal representatives of the said M. K. Booth. His first wife having died, the alternative provision comes in, and the language of the certificate would read, "that the society should pay to his legal representatives;" or if we substitute in the place of "his deceased wife," "his widow living at the time of his death," then the construction would be that it should be paid to his widow—if one could be substituted for the other, or for "his legal representatives." Unfortunately there is not in this case as there was in the Kentucky case, that clear legislation about the terms of the contract to show that it was the intention of the society and of the member, that the money should be paid in the case of his death either to wife or to child. It is easy to see that very complicated and difficult questions might arise on that assumption. Suppose, for example, there was no wife or child living. Suppose there were none but distant collateral relatives surviving him. In such a case as that, there might be a question whether it was the intention to limit the payment only to a widow and children as the legal representatives. I apprehend the society could not successfully resist a claim that might be made by those collateral relatives, however remote, through the administrator of the estate for the payment of the money that might be due at the time of his death. And then there is another question. We must not assume that in all cases the party dying will be insolvent. He may have other property independent of the sum which may become due from the society, and this therefore may be only a portion of his estate. If that were the case, then of course it would not be so important to determine whether it was the child or the legal representative of the estate generally, as the administrator, who would be entitled to the money, because there would then be money enough to pay the debt, and perhaps to give to the children, if there were children, or the widow, the share of the estate which the law would give to each, whether it were taken from this fund, or the other portion of the estate. So that it will be seen the difficulties which surround the question in this case are very numerous and complicated, and the authorities are not at all conclusive, and in view of the fact that this is simply an interpleader filed by the society for the purpose of determining to whom the money shall be paid, without any special application on the part of the widow, I shall direct the money to be paid to the administrator, but upon condition only that he furnishes satisfactory security to hold it for the benefit of whom it may concern. The law in this state seems to provide that where a person has obtained administration of the estate of an intestate in any other state, he may prosecute suits to enforce claims of the estate of the deceased in this state, upon producing an authenticated copy of the letters of administration in the manner prescribed by the laws of congress, provided letters of administration have not been granted in this state; and the law declares that where a suit is commenced by a foreign administrator, and during its pendency an administrator is appointed in this state, the latter must be substituted for the former to control the suit.

In view of the particular circumstances of this case, I think it the duty of the court to provide that before the money is paid by the society to a foreign administrator, adequate security should be given in this state that the money should be held for the benefit of whom it may concern. Rev. St. 1874, p. 112, §§ 42, 43. If I were clear in my own mind that the money ought to be paid to the widow and child, I would direct it so to be done. I am of the opinion the safer course is that it should be paid to the administrator of the estate, and if this administrator will not comply with the order of the court, then I shall direct the society to hold the money until letters of administration are taken out in this state. Ordered accordingly.