STEELE, administrator, *v.* GATLIN.

115    929
Case 2
£125   207
125    433
115    929
Case 2
128    404

1. A policy of life-insurance is a chose in action, even before the death of the insured.
2. To vest the legal title to a policy of life-insurance in an assignee, it is essential that the assignment should be in writing.
3. A verbal assignment of a policy of life-insurance by the insured, accompanied by words indicating an intention to give, and by a delivery of the policy, does not constitute a complete gift; and in such a case a court of equity will not interfere, at the instance of the alleged donee, to complete the gift, when she has not acted to her injury or incurred expense on the faith of the incomplete gift.

Submitted May 1, — Decided July 19, 1902.

Equitable petition. Before Judge Lumpkin. Fulton superior court. December 21, 1901.

*Arnold & Arnold*, for plaintiff in error.
*C. T. Ladson*, contra.

COBB, J. Mrs. Gatlin brought suit against N. J. Steele, as administrator of the estate of J. R. Steele; the allegations of the petition being, in substance, as follows: The estate of J. R. Steele is

solvent, there being no creditors of the same, and his heirs at law are brothers and children of deceased brothers and children of a deceased sister, the plaintiff being one of the latter. The decedent during his lifetime had procured two policies of insurance upon his life in a named association, payable to his "estate or his lawful heirs," copies of these policies being attached to the petition as exhibits. The association was a mutual benefit and assessment association, and by its constitution and by-laws the insured had a right, upon compliance with certain requirements, to change the name of the beneficiaries at pleasure, but no change was ever made in accordance with the rules of the association. Three years before the death of the insured he "verbally assigned" the policies to the plaintiff and delivered the same to her for her exclusive benefit, saying at the time that he wanted her to have the money that would be paid thereon, that he would always keep the dues paid up as long as he lived, and that the policies would be to plaintiff "as good as gold." Plaintiff accepted the gift and received the policies from her uncle's own hands, who told her to take good care of them, as the money paid thereunder would help support plaintiff and her children. Plaintiff kept the policies as long as her uncle lived and until they were surrendered to the association after his death. Her uncle often spoke of having given the policies to her after the delivery above referred to. Upon being asked if it was necessary "to put the policies in petitioner's name," he said no written assignment was necessary to make the gift legal and binding, nor was it necessary that plaintiff's name should be placed on the policies or upon the books of the association; that he had previously caused other policies which he held in the association, and which stood in the name of another beneficiary, changed "to his estate and his heirs," so that he could at any time by mere gift and manual delivery give and verbally assign the same to whomsoever he might select, without the necessity of changing the beneficiaries upon the books of the association. For years before and since her uncle verbally assigned to her the policies plaintiff had rendered to him many acts of kindly service, and he visited her home and in many ways showed his affection for her. Upon the death of her uncle plaintiff and defendant each made proofs of loss under the policies. To avoid delay in collecting the amount due from the association, plaintiff and defendant, without waiving any of their

legal or equitable rights, entered into an agreement to collect the amount from the association and abide by the decision of the courts as to who owned the money. Under this agreement the money was collected from the association and placed in a solvent bank, subject to the joint check of plaintiff and defendant; the bank acting as a stakeholder until there could be a final judgment and decree of a court having jurisdiction to settle the controversy. Plaintiff avers that she is the rightful and equitable owner of the fund in controversy; and she prays for a judgment and decree to this effect, and for general relief. To this petition the defendant filed a demurrer upon various grounds, among them being that the petition set forth no ground for relief, legal or equitable; that no consideration is stated for the assignment of the policies to plaintiff; that the petition shows upon its face that the assignment relied on was verbal, and under the law the assignment would not be valid unless it was in writing. The court overruled the demurrer, and the defendant excepted.

A policy of life-insurance is, after the death of the insured, unquestionably a chose in action, it being then simply a promise to pay money. It has been held in numerous cases that a policy of life-insurance, even before the death of the insured, is a chose in action. See Ex parte Ibbetson, 8 Chan. Div. 519; Harley v. Heist, 86 Ind. 196, s. c. 44 Am. Rep. 285; Bushnell v. Bushnell, 92 Ind. 503; Hutson v. Merrifield, 51 Ind. 24, s. c. 19 Am. Rep. 722; New York Life Ins. Co. v. Flack, 3 Md. 341, s. c. 56 Am. Dec. 742; Ionia Bank v. McLean, 84 Mich. 625; Palmer v. Merrill, 6 Cush. (Mass.) 282. A policy of life-insurance, being a chose in action arising upon a contract, may, under the provisions of our code, be assigned so as to vest the title in the assignee. Civil Code, § 3077. But such assignment must be in writing. *Turk* v. *Cook*, 63 *Ga.* 681; *Planters' Bank* v. *Prater*, 64 *Ga.* 613; *Hartford Fire Ins. Co.* v. *Amos*, 98 *Ga.* 533, 534, and cases cited. The code provisions in reference to fire-insurance are, wherever applicable, equally the law of life-insurance. Civil Code, § 2117. In *Saint Paul Ins. Co.* v. *Grocery Co.*, 113 *Ga.* 786, it was held that an assignment of a policy of fire-insurance must be in writing. In the opinion Mr. Justice Fish says: "The Civil Code, § 2089, requires that a contract of fire-insurance must be in writing. As an assignment of an insurance policy with the assent of the company is a new con-

tract of insurance between it and the assignee, it must, under the provisions of this section of the code, be in writing." In the case of *Hartford Fire Ins. Co.* v. *Amos*, supra, and in the case of *National Fire Ins. Co.* v. *Grace*, 106 *Ga.* 264, it was held that in order to transfer the legal title to a policy of fire-insurance the assignment must be in writing. As the assignment of a policy of fire-insurance, in order to be valid, must be in writing, so, under the provisions of our code making the principles relating to fire-insurance, wherever applicable, apply equally to the law of life-insurance, an assignment of a policy of life-insurance must be in writing in order to vest the title in the person claiming to be the assignee. The assignment of the policies in the present case not having been in writing but merely verbal, the plaintiff did not acquire title to the same, and hence could not maintain a suit in her own name against the association upon the policies. It is said, though, that even if it be true that if the association had not paid the amount of the policies to the bank, to be held subject to the rights of the plaintiff and defendant, the plaintiff could not have maintained in her own name an action on the policies, still, under the facts alleged in the petition, the plaintiff became in equity the owner of the policies, and while the legal title to the same would be in the administrator of the estate of the insured, the plaintiff would be entitled to use the name of the administrator in order to enforce her claim against the association as the equitable owner of the policies. If the plaintiff had been a purchaser of the policies for value, she would in equity be the owner of the same and would be entitled to use the name of the administrator for the purpose of asserting her rights. The verbal assignment of the policies to the plaintiff, although followed by an actual delivery thereof, was entirely without any valuable consideration. The transaction would not be complete as a gift under the law of this State, unless the assignment was in writing; and it is too well settled now to admit of controversy, at least in this State, that equity will not interfere at the instance of a volunteer for the mere purpose of making perfect a gift which was incomplete because lacking in some of the essentials required by law.

There are cases holding that bonds and other negotiable obligations for the payment of money may be the subject of a valid gift, and that a delivery of the obligation to the donee without written

assignment but with a clear and manifest intention to pass the title
is sufficient to satisfy the rule requiring delivery of the thing given ;
and this rule has been applied to a life-insurance policy.　See
Travelers' Ins. Co. v. Grant (N. J.), 33 Atl. 1060 ; 3 Joyce, Ins.
§ 2326 ; 1 Bacon's Ben. Soc. (new ed.) § 297.　Even if, in those
jurisdictions where the law does not require the assignment of a
life-insurance policy to be in writing, a verbal assignment; followed
by actual delivery of the policy and words indicating an intention
to give, would make a complete gift, certainly in this State, where
the law requires the assignment to be in writing, a gift which was
not a substantial compliance with the statute would not have the
effect to vest the title, either legal or equitable, in a mere volun-
teer.　Mr. Justice Hall, in *Nally* v. *Nally,* 74 *Ga.* 669, 673, thus
states the rule governing the case of a volunteer who appeals to a
court of equity : "Equity never interferes in favor of volunteers, ex-
cept where the contract is actually executed (Code, § 3116 [Civil
Code, § 3972]), and will never decree the performance of a volun-
tary agreement, or merely gratuitous promise, unless the volunteer
has gone into possession, and upon the faith of the agreement has
incurred expense in making improvements of the property donated,
or has done something of a similar nature which would render it
inequitable upon the part of the donor not to carry out the contract.
. . The donee must not be placed in a worse condition than she
was before the gift was tendered."　In the present case the plain-
tiff is in exactly the condition she was in at the time of the verbal
assignment; she has done nothing to change her position ; and
nothing in the allegations of her petition would authorize a court of
equity to interfere in her behalf.　She failed to secure a legal title
to the policies when she relied upon a verbal transfer, and this
transfer, although accompanied by a delivery of the policies and
words indicating an intention to give, will not make her the equita-
ble owner, when she has done nothing upon the faith of the trans-
fer which would make it inequitable for the heirs or legal repre-
sentatives of the insured to urge now the invalidity of the transfer on
account of the failure of the parties to comply with the rule of law
requiring such an assignment to be in writing.　There is nothing
in the case of *Nally* v. *Nally,* supra, to conflict with the ruling
now made.　The contest there was between a sister who was the
named beneficiary in a policy of life-insurance as originally issued,

and the wife of the insured, who had married him upon the faith of a promise that the policy should be so changed as to make her the beneficiary. This change was authorized by the terms of the policy, without the consent of the beneficiary named therein. The company had agreed to make the change, but had neglected to do so. It was held that as the sister was a mere volunteer and the wife was a purchaser for value, marriage being a valuable consideration, the wife was to be preferred and was entitled to the proceeds of the policy. The court erred in overruling the demurrer.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*