HACKNEY *v.* SHARP.[*]

(*Nashville*, December Term, 1941.)

Opinion filed January 19, 1942.

J. M. INGRAM, of Columbia, for appellant.

HOPKINS & HOPKINS, of Columbia, for appellee.

[*]This case is reprinted and annotated in 138 A. L. R. 1354.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This case presents a contest over the proceeds of a policy of life insurance between the widow and administratrix of the insured and a creditor of the insured. The chancellor decided the case in favor of the creditor and the widow has appealed.

The case was tried below on a stipulation of facts from which it appears that the deceased Hackney and the defendant Sharp were partners engaged in business in Maury County, Tennessee. During the conduct of this business Hackney became indebted to Sharp in the sum of $1,618 and executed his note for that amount on July 24, 1936, payable to Sharp.

On April 24, 1935, Hackney took out a policy of insurance on his life in the sum of $5,000 payable to his widow, the complainant herein.

The stipulation sets out that Hackney's health began to fail in July, 1936, and that to secure his note to Sharp, Hackney and his wife assigned said policy to the latter as collateral security.

It further appears that in September, 1938, Hackney's health had become more impaired, that he was unable to work, had become financially embarrassed, and had great difficulty in meeting the premiums on the insurance policy. This fact was called to the attention of Sharp, and it was agreed between the two men that Sharp would advance or repay to Hackney the amount already expended by Hackney in payment of premiums on the policy and that Sharp would assume the payment of further premiums on the policy and would cancel the $1,618 note held against Hackney. The stipulation shows that Sharp paid further premiums on the policy prior to Hackney's

death amounting to $584.50 and, according to our calculations, he must have paid to Hackney something over $1,100 by way of reimbursing Hackney for premiums on the policy that he (Hackney) had paid.

At the time of the last agreement between Sharp and Hackney, Hackney executed an assignment of the policy to Sharp, in which assignment Mrs. Hackney joined, undertaking to convey absolute title to said policy to Sharp.

Hackney died in 1939 and the insurance company paid the amount of the policy to Sharp, the same being $5,012.13.

As we figure the transaction, exclusive of interest, the policy, including the original debt, repayment to Hackney of premiums paid by him, and premiums paid by Sharp, cost Sharp $3,558.50. The stipulation does not set out the exact figures and the above figures are subject to correction when the final decree is prepared, but are approximately correct.

Mrs. Hackney sues Sharp to recover the difference between the amount received by Sharp on the policy and the aggregate of his expenditures as above detailed. She relies on the authority of *Quinn* v. *Supreme Council, Catholic Knights,* 99 Tenn., 80, 41 S. W., 343, and *Bendet* v. *Ellis,* 120 Tenn., 277, 297, 111 S. W., 795, 18 L. R. A. (N. S.), 114, 127 Am. St. Rep., 1000. The former case involved a benefit certificate payable to a member of the Catholic Knights of America. The later case involved life insurance policies payable to the executors, administrators and assigns of the insured. The benefit certificate and the insurance policies were assigned to persons without insurable interest in the life of the insured. The assignees were not creditors. The benefit certificate and

the policies of insurance were taken out and assigned in pursuance of previous arrangements between the insured and the assignees. The transactions were purely speculative on the part of the assignees. Both transactions were held to be wagering in character. The assignees were permitted to retain out of sums received by them on the death of the insured the amounts they had expended in payment of premiums and the balance of the proceeds of the policies were decreed to the representatives of the insured.

The case before us is altogether different. Sharp was a *bona fide* creditor of Hackney to the extent of $1,618 at the time of the first assignment. At the time of the final assignment, when he reimbursed Hackney for premiums paid by the latter, Sharp was Hackney's creditor to the extent of about $2,700. Thereafter Sharp paid in premiums $584.50. The record indicates that the annual premium on the policy was $351.10. It is true, according to the stipulation, that Hackney was suffering with heart disease at the time of the final assignment of this policy to Sharp in 1938, but people so afflicted often live for many years. Had Hackney lived four years longer, figuring interest on the $2,700 debt, and the amount of the premium on this policy, the sum that Sharp would have received from the insurance company would have fallen short of repaying his outlay.

Under these circumstances we do not think the transaction involved can be described as wagering in character. Sharp already held a very considerable debt against Hackney. Sharp held the insurance policy as collateral. The policy was about to lapse on account of Hackney's inability to keep up the premiums. By way of protecting his collateral and securing his debt, Sharp made a further

advance to Hackney and assumed payment of future premiums. No fraud is suggested and we see nothing contrary to public policy here appearing.

The policy of insurance taken out by Hackney on his own life in favor of his wife was certainly valid in its inception and, under the circumstances of this case, we think it was equally valid in the hands of the assignee. No previous decision of this Court has held invalid an absolute assignment of a life insurance policy to a *bona fide* creditor of the insured when there was no great disproportion between the amount of the policy and the debt due the assignee and the extent of the obligation assumed by the assignee under the assignment.

Had this policy of insurance at the time of the assignment been issued directly for the benefit of Sharp, it would not have been a wager policy under the great weight of authority.

In the Couch Cyclopedia of Insurance Law, Vol. 1, section 300, it is said: "If a policy is supported by a substantial interest, it does not become a wager merely because such interest is overvalued." Many illustrations follow in this text instancing policies held valid where the difference between the debt and the face of the policy was much greater than that in the case before us.

To the same effect are numerous cases collected in Cooley's Briefs on Insurance, Second Edition, Vol. 1, pp. 402 et seq.

Since a policy taken out directly by Sharp on the life of Hackney at the time of the assignment would have been valid, free from criticism as a wager, the assignment of the policy to Sharp by Hackney and his wife likewise was good and passed title to the proceeds of such policy.

This view is supported by *Marquet* v. *Aetna Life In-*

*surance Company,* 128 Tenn., 213, 159 S. W., 733, L. R.
A. 1915B, 749, Ann. Cas. 1915B, 677, and *Wurzburg* v.
*New York Life Ins. Co.,* 140 Tenn., 59, 203 S. W., 332, 334,
L. R. A. 1918E, 566.

In the Marquet case the policy of insurance was effected on the life of a husband for his wife's benefit. She obtained a divorce from him before his death. Upon his death, the insurance company resisted payment on the ground that she had no insurable interest in his life. The Court held that her interest was to be tested as of the date of the original contract and that she was entitled to recover on the policy notwithstanding the divorce.

In the Wurzburg case a policy of insurance was effected by a corporation for its own benefit on the life of its managing officer. The connection of this officer with the corporation ceased before his death. After his death the corporation collected the full amount of the policy and the administrator of the insured sought to recover said amount less such sum as was necessary to reimburse the corporation for the amount of premiums paid by it and interest upon such payments. The corporation was held entitled to the full amount of the policy because the same was valid when issued. The Court held that the full amount paid on the policy belonged to the corporation because a policy of insurance was not "a mere contract of indemnity" but was "a contract to pay the beneficiary a certain sum of money in the event of death."

*Rison* v. *Wilkerson,* 35 Tenn. (3 Sneed), 565, 566; *Scobey* v. *Waters,* 78 Tenn. (10 Lea), 551; *Nashville Trust Company* v. *First Nat. Bank,* 123 Tenn., 617, 134 S. W., 311, and that line of cases relied on by complainant herein, are not in point. It distinctly appeared in those cases that there the policy of insurance was assigned to the

creditor by way of collateral security for the debt and the creditor was entitled to retain out of the proceeds no more than the debt and interest. Here the assignment was absolute.

The decree of the chancellor must be affirmed.