31321. PROGRESSIVE LIFE INSURANCE COMPANY *v.* BOHANNON.

618

DECIDED OCTOBER 29, 1946. REHEARING DENIED DECEMBER 11, 1946.

*Craighead, Dwyer & Lavender, M. H. Blackshear,* for plaintiff in error.

*Will Ed Smith,* contra.

GARDNER, J. ■ We will discuss grounds 1, 2, and 8 of the demurrer together. These grounds attack the petition because the plaintiff had no right to maintain the action since the policy was not assigned in compliance with a stipulation in the policy concerning the assignment of the policy. The policy provides: "No assignment of this policy shall be binding upon the company unless filed in duplicate at the home office, one to be retained by the company, and the other to be returned to the insured. The company assumes no responsibility for the validity of the assignment." In *Steele* v. *Gatlin,* 115 *Ga.* 929, 931 (42 S. E. 253, 59 L. R. A. 129), it was said: "A policy of life insurance is a chose in action." The Code, § 85-1803, reads: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee, but he takes it, except negotiable instruments, subject to the equities existing between the assignor and debtor at the time of the assignment, and until notice of the assignment is given to the person liable." Section 56-828 reads: "After the loss shall occur, a sale of the property insured and transfer of the policy shall not affect the liability of the insurer, but the assignee may recover on the policy to the same extent as the assignor could have done." In *Georgia Co-op. Fire Association* v. *Borchardt,* 123 *Ga.* 181 (1, 2) (51 S. E. 429, 3 Ann. Cas. 472), the Supreme Court said: "The assignment of a fire-insurance policy without the consent of the insurer, after a loss has occurred thereunder, does not render the policy void, but the assignee has the right to bring an action thereon. . . Such an assignment is valid without the consent of the insurer, although the written transfer of the policy purports by its terms to be subject to the consent of the insurer." See also *Daniels* v. *Meinhard Bros. & Co.,* 53 *Ga.* 359 (3). The Code, § 56-911, reads: "The principles before stated as to fire insurance, wherever applicable, shall be equally the law of life insurance."

In 46 C. J. S. 1169, p. 53, it is said: "Except under circumstances to which policy or statutory prohibitions expressly apply,

the policy, or the claim or cause of action thereunder, may be validly assigned after maturity, even though, because of prohibitions or limitations in the policy, it could not have been assigned before the policy had matured; and stipulations prohibiting assignments after maturity have been held void as against public policy."

It is stated in 37 C. J. 140, note 85 (d) : "After the maturity (1) of the policy by the happening of the loss, consent of the company to the assignment is immaterial (Meagher v. Life Union, 65 Hun. 354, 20 N. Y. Supp. 247; Mower v. Reverting Fund Assurance Association, 1 Pa. Super. 170) ; (2) because it has become a debt and is no longer subject to the restrictions in the policy (Mower v. Fund. Assur. Assoc., supra)." It would thus appear that after the life-insurance policy has matured by the death of the insured, the policy may be assigned as any chose in action regardless of any stipulation in the policy. A stipulation in a life-insurance policy as above set forth, relative to an assignment thereof, applies to an assignment during the lifetime of the insured, and has no application whatsoever to an assignment after the death of the insured. Counsel for the defendant cite a number of authorities to sustain their contention that the plaintiff had no right to maintain the action because there was no transfer to her in accordance with the stipulations in the policy. The cases cited by counsel are: *Security Mutual Life Ins. Co.* v. *Bankers Trust &c. Co.,* 32 *Ga. App.* 536 (124 S. E. 53) ; *Thomas* v. *Metropolitan Life Ins. Co.,* 144 *Ga.* 367 (87 S. E. 303) ; *McNeil* v. *Metropolitan Life Ins. Co.,* 58 *Ga. App.* 588 (199 S. E. 442) ; *Metropolitan Life Ins. Co.* v. *Applewhite,* 66 *Ga. App.* 290 (18 S. E. 2d, 93) ; *Tyler* v. *National Life &c. Ins. Co.,* 48 *Ga. App.* 339 (172 S. E. 747). Upon an examination of these cases, it will be found that the assignment or attempted assignment was made during the lifetime of the insured, except in the *Tyler* case, where it is apparent that there was an attempted assignment after the death of the insured. If there be any conflict in what we have herein ruled, based on both statutory law and the decisions of the Supreme Court which we have cited, the ruling in the *Tyler* case, must yield to the statutory law and to the Supreme Court decisions. It might be that the facts in the *Tyler* case differentiate it from the facts in the instant case.

■ Ground 3 of the demurrer attacks the petition because it does not allege what amount, if any, was due to the beneficiary,

First Federal Savings and Loan Association, at the time of the death of the insured, and because the only consideration expressed in the transfer from the loan association to the plaintiff was "for a sufficient and valuable consideration." It clearly appears from the petition that the beneficiary was a creditor of the insured. It is elementary that a creditor has an insurable interest in the life of his debtor to the extent of the debt. A specific amount is alleged in the petition to be due, under the policy, to the assignee. She stands in the shoes of the assignor to the extent of his debt. This is a question of proof.

■ Ground 4 of the demurrer attacks the petition on the ground that the first premium had not been paid in accordance with the stipulation of the policy, and that the time for payment was not extended by the president, vice-president, or secretary of the company, in writing, in accordance with the terms of the policy. The petition alleged that the policy was effective April 1, 1945, and that the soliciting agent of the company, First Federal Savings and Loan Association, held it until June 9, 1945, at which time the soliciting agent collected the premiums for the months of April, May, and June, and delivered the policy to the insured at a time when he was in good health; that the soliciting agent retained the premiums and has them now. On June 19, 1945, the insured was stricken with a heart attack and died before medical aid could reach him.

The stipulations of the policy concerning the premiums and the delivery of the policy are:

"Consideration: This contract is made in consideration of the advance payment of One and 79/100 Dollars which maintains this policy in force for a period of one month from the date hereof and the payment hereafter on the 1st day of each month of the monthly premium stipulated in the table of premiums on the fourth page hereof.

"Premiums: The policy shall not take effect until it has actually been delivered to and accepted by the insured, nor until the first premium shall have been paid while the insured is alive and in good health. Possession of this policy shall not be construed as a waiver of these conditions.

"All premiums are payable on or before their due date at the home office of the company, or to an authorized agent of the com-

pany, etc. . . Failure to pay any premium or installment thereof when due shall cause this policy to cease and determine, except as herein provided, and all payments made hereon shall remain the property of the company.

"Only the president, vice-president, or secretary has the power on behalf of the company, and then only in writing, to make or modify this or any other contract of insurance, or extend the time for paying any premium, and the company shall not be bound by any promise or representation heretofore or hereafter given by any agent or person.

"Application for insurance B: The insurance issued in pursuance of this application shall in no event take effect or be binding until the written policy is delivered to the assured while in good health and the full first premium paid."

It must be kept in mind that First Federal Loan and Savings Association was the soliciting agent for the policy of insurance in question. The insurance company sent the policy to the loan company, its soliciting agent. The loan company kept it and finally, on June 9, 1945, collected the monthly premiums for April, May, and June and delivered the policy to the insured, according to the allegations of the petition. It is well established that stipulations in a life-insurance policy similar to the provisions now under consideration apply only after the policy is put into effect by the payment of the premiums and delivery of the policy. They do not apply to negotiations leading up to the execution and delivery of the contract and the payment of the first premium. In *Progressive Life Ins. Co.* v. *James,* 62 *Ga. App.* 387 (8 S. E. 2d, 91), Chief Judge Broyles speaking for the court said: "One who solicits insurance and represents the company in conducting the negotiations which lead up to the execution of the contract, and subsequently in the delivery of the contract itself, is the general agent of the company with reference to that particular contract. Relative to it, he is as much the alter ego of the company as any other corporate officer." Therefore the contention that the first premium was not paid on April 1, and that the time had not been extended by the president, vice-president, or secretary of the defendant company, in writing, is without merit. See also in this connection *Life & Casualty Ins. Co. of Tenn.* v. *Jordan,* 69 *Ga. App.* 287 (25 S. E. 2d, 103); *Citizens National Life Ins. Co.* v. *Ragan,* 13 *Ga. App.*

29 (2) (78 S. E. 683); *Kelley* v. *Carolina Life Ins. Co.,* 48 *Ga. App.* 106 (171 S. E. 847); *Causey* v. *Gulf Life Ins. Co.,* 62 *Ga. App.* 378 (8 S. E. 2d, 535); *Jones* v. *Pacific Mutual Life Ins. Co.,* 57 *Ga. App.* 16 (194 S. E. 249). It therefore follows that this ground of the demurrer shows no cause for reversal.

■ Ground 5 of the demurrer attacks the petition on the ground that it does not allege facts sufficient to show delivery during the life of the insured while he was in good health and after the collection of the first premium. We have partially covered this question with reference to the payment of the premium. The question of delivery is one of fact. On this subject we find in 145 A. L. R. 1436, the following: "Whether a policy of insurance has been 'delivered' or 'actually delivered' within an express provision for delivery in order to make the policy effective as a contract of insurance, is dependent chiefly upon the intention of the parties as shown by their acts or agreements. And as said in Couch on Insurance, Vol. 1, p. 277, Par. 119, 'the criterion by which the question is to be determined is not who has actual possession of the policy, but who has the right of possession.' The tentative statement of the general rule, suggested with certain reservations in the previous annotation at 493, and adopted by American Jurisprudence (29 Am. Jur. 164, 165, Insurance, Sec. 148) has proved its correctness by the later decisions. The rule is stated as follows: 'Where an application for a policy of insurance has been accepted, and a policy issued, the premium paid, and nothing remains to be done by the applicant, any disposition of the policy by the insurer which evidences an intention to put the policy out of its control, and in the control of the applicant, is sufficient to amount to a delivery, or actual delivery, of the policy within the terms of a provision referring to delivery or actual delivery.'" This ground shows no cause for reversal.

■ Ground 7 attacks the petition on the ground that no one entitled to do so has offered to make proof of the death of the insured. Paragraph 18 of the petition reads: "Petitioner shows that the defendant has waived the requirements of said policy relating to the furnishing of proofs of death, by refusing to furnish the same and by refusing to pay the proceeds of said policy and by denying liability thereunder." The allegations of this paragraph dispense with the requirement to make proof of death of the in-

sured. *Adams* v. *Washington Fidelity National Ins. Co.*, 48 *Ga. App.* 753 (3) (173 S. E. 247), reads: "A denial by an insurance company of liability under a life-insurance policy after it had received notice of the insured's death, and a refusal by the company to furnish blanks upon which proofs of death should be made as required by the policy, dispenses with a compliance with this provision of the policy." There is no merit in this ground.

We have carefully read the authorities cited by the attorneys for the defendant, and while we have not called attention to all of them, they are not authority, as we see it, for the contentions urged.

The court did not err in overruling the demurrers for any of the reasons assigned.

*Judgment affirmed.* *Broyles, C. J., and MacIntyre, J., concur.*