224 Ga. 203 (1968)
160 S.E.2d 898
BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA
v.
COMMERCIAL TRANSPORTATION, INC.
24524.
Supreme Court of Georgia.
Submitted March 12, 1968.
Decided April 4, 1968.
Vandiver, Barwick & Bentley, Thomas G. Bentley, John E. Talmadge, for appellant.
R. Elliott Dunn, Jr., Reed & Dunn, for appellee.
NICHOLS, Justice.
1. The petition as amended showed that the original action in the City Court of Hall County was filed within the time provided by the policy, that defensive pleadings *204 were filed by the defendant, that it was seeking to recover for the same loss under the same policy, that the costs were paid and the present action was filed within six months of such dismissal by the plaintiff.
While a void suit will not authorize a renewal action by a plaintiff under Code § 3-808 as amended by the Act of 1967 (Ga. L. 1967, pp. 226, 244; Code Ann. § 3-808), the first action was not void. Defensive pleadings were filed, and the mere fact that a recovery may not have been authorized will not constitute such an action void where the trial court had jurisdiction of the cause of action. See Atlanta, Knoxville &c. R. Co. v. Wilson, 119 Ga. 781 (3) (47 SE 366); Lamb v. Howard, 150 Ga. 12 (102 SE 436); Cutliffe v. Pryce, 187 Ga. 51 (200 SE 124). The trial court did not err in overruling the defendant's motion to dismiss on the ground that the action was filed more than twelve months after the loss occurred.
2. The plaintiff's petition alleged that it is engaged in the business of acting as a broker for the transportation of poultry products from various processors located in North Georgia to points in the United States; petitioner would be contacted by a processor who had a load to be transported and in turn petitioner would contact a trucker and arrange to have a load picked up from the processor and delivered to its destination, for which petitioner charges a percentage of the gross receipts as its brokerage fee and out of this percentage petitioner pays for liability and cargo insurance; petitioner normally does not own or lease any of the tractors or trailers used to transport the poultry products, but merely acts as a broker by securing loads to be transported by independent truckers who own their own tractors and trailers; that at some time prior to the first of February, 1963, petitioner requested defendant, through its agent, Insurers Incorporated, Athens, Georgia, to issue to petitioner a motor truck cargo policy with various indorsements, including a theft indorsement, insuring petitioner against loss of cargo by theft or any of the other specified perils; that defendant's agent, Insurers Incorporated, was a specialist in long-haul trucking and that said agent came to petitioner's place of business in Gainesville, Georgia, and completely analyzed *205 petitioner's type of operation; that defendant's agent at all times had knowledge of, and was aware of, petitioner's arrangement with the various processors and truckers, that is, that petitioner was a brokerage concern, and that the policy requested by petitioner had been written by defendant's agent specifically to cover the type of operation conducted by petitioner, said policy being issued on or about the first day of February, 1963; that the period for which the contract was effective was from February 1, 1963, and it was continuously in force and effect up until and at the time of the loss upon which the action was founded, all premiums having been paid; that petitioner believed that the policy issued by the defendant and delivered to the petitioner was in compliance with the terms of the defendant's agreement to issue and deliver to petitioner a motor truck cargo policy with various indorsements covering specified perils, including theft, which would insure petitioner against a loss of cargo in petitioner's particular type of operation, that is, a brokerage operation; that through mutual mistake the plaintiff and defendant, and by accident, the policy issued by defendant was not such a policy as had been contracted for and agreed to be issued to petitioner, but instead the policy so issued, by its terms, did not protect plaintiff from, or insure plaintiff against a loss of cargo by theft or otherwise, in the normal course of operation of plaintiff's business; that the policy provided "this policy covers the liability of the assured as carrier, bailee, or warehouseman under tariff, bill of lading or shipping receipt issued by the assured, for direct loss or damage, from perils hereinafter specified, on shipment of lawful goods or merchandise (hereinafter called property) consisting of ... while loaded for shipment and in transit in or on vehicles owned, leased or operated by the assured (or vehicles described below or in schedule attached to and forming a part of this policy) within the Continental United States and Canada." It was further alleged that the policy contains no description of other vehicles nor is a schedule attached to the policy which contains a description of other vehicles, and that by virtue of the above quoted provision in said policy, such policy does not insure petitioner against any loss of cargo by virtue of the *206 fact that petitioner does not own, lease, or operate any of the vehicles which transport the products, these vehicles at all times being owned, leased or operated by parties other than the plaintiff; that under the contract made between plaintiff and defendant as alleged such a provision as above quoted was not to be included in the policy issued to plaintiff by defendant but that said policy was intended to protect plaintiff from, and insure it against, cargo losses from the specified perils while such cargo was loaded for shipment and in transit in or on vehicles "not" owned, leased or operated by the plaintiff. The plaintiff also alleges the losses during the policy period, compliance with the provisions of the policy as to proof of loss, etc., and prays for reformation of the contract so as to provide coverage insuring the plaintiff against a cargo loss from the specified perils while such cargo was in transit in or on vehicles "not" owned, leased or operated by plaintiff, for the amount of the losses, penalty and attorney's fees. By amendment it was alleged that it was only after the first action was filed in the City Court of Hall County that it was brought to the attention of the plaintiff that the reformation of the contract would be necessitated in order for the plaintiff to recover for the losses.
It is contended that since the policy of insurance was in the plaintiff's possession for approximately eighteen months before the losses occurred the plaintiff has failed to exercise reasonable diligence in ascertaining the contents of the policy and therefore there can be no recovery.
As was held in Southern Feed Stores v. Great American Indem. Co., 182 Ga. 442, 444 (185 SE 723) (where six months elapsed from the issuance of the policy until the loss occurred), quoting from Niagara Fire Ins. Co. v. Jordan, 134 Ga. 667 (86 SE 611, 20 AC 263), "`The trend of authority is that a mere failure of the insured to read his policy does not amount to such laches as will debar him from having such policy reformed for mistake therein. Fitchner v. Fidelity Mutual Fire Ass'n, 103 Iowa 276 (72 NW 5300; Taylor v. Glens Falls Fire Ins. Co., [44 Fla. 273 (32 S 887)]; Phoenix Ins. Co. v. Gurnee, 1 Paige 278 (19 AD 431). A policy of insurance is issued by the insurer and signed by him or his agents; it is not contemplated that the *207 insured shall sign it. In the insurer's promise to deliver an accurate policy, according to his oral agreement with the insured, the insured has a just expectation that there will be no designated variance. A man should not be permitted for his pecuniary advantage to impute it to another as gross negligence that the other trusted to his fidelity to his promise. Palmer v. Hartford Fire Ins. Co., 54 Conn. 488 (9 A 248). The case is quite different from those instances where a man, who has negligently signed a contract, endeavors to be relieved of its obligation by setting up his own negligence. The fact that the policy as actually made out was in the plaintiff's hands for nearly three months, and until after the fire occurred, is a circumstance to be weighed by the jury as bearing on the truth of the allegation that the policy did not pursue the oral contract.' In Overland Southern Motor Co. v. Maryland Cas. Co., 147 Ga. 63 (92 SE 931), the court adopted most of the above quotation in discussing a question similar to the question involved here. And there are other cases where rulings similar to that stated in these excerpts are applied. See Equitable Building & Loan Assn. v. Brady, 171 Ga. 576 (156 SE 222)."
While the time the policy had been in the plaintiff's possession was a circumstance to be considered by the jury in determining the truth of the allegations with reference to the intention of the parties as to what the contract of insurance was to contain, the mere lapse of time between the issuance of the policy and the loss will not bar the plaintiff as a matter of law from having the contract reformed. The trial court did not err in overruling the motion to dismiss the petition as failing to state a claim upon which relief could be granted.
This case deals with pleadings only and is therefore distinguishable from Hartford Accident & Indemnity Co. v. Walka Mountain Camp No. 565, Woodmen of the World, Inc., 224 Ga. 194.
Judgment affirmed. All the Justices concur.