The **PRUDENTIAL INSURANCE COMPANY OF AMERICA, Plaintiff,**

**v.**

**Gladys S. BENNETT, First Defendant, Central Savannah Area Broadcasting Company, Second Defendant, Cecil Barnes, Third Defendant, Patrick Mulherin, Fourth Defendant.**

**Civ. A. No. 1395.**

United States District Court
S. D. Georgia,
Augusta Division.

Nov. 26, 1968.

Supplementary Opinion, Jan. 10, 1969.

Julian B. Willingham, Augusta, Ga., King & Spalding, Atlanta, Ga., for plaintiff.

Maurice Steinberg, James E. Slaton, Augusta, Ga., for defendants.

### OPINION OF COURT

LAWRENCE, District Judge.

Prudential seeks reformation of a group insurance policy and prays for interpleader among the contesting beneficiaries in respect to life insurance proceeds paid into the registry of this court by plaintiff.

The central issue is whether Prudential owes the beneficiaries (whoever they are) $12,000 or $40,000, the latter being the face amount of life insurance issued on the life of Thurston H. Bennett as shown by the Certificate of Insurance under the group policy and which amount was subsequently carried over into his converted ordinary life policy.

The group policy covered employees of Central Area Broadcasting Co., Inc. and was dated December 1, 1966. Bennett was then Assistant General Manager of Central and was in charge of sales of advertising. Under the policy the amount of life insurance to which employees were entitled was governed by a scale graduated to ranges of annual earnings. Employees earning $14,000 or over were entitled to the maximum coverage of $40,000. Effective December 1, 1966 a Certificate under the group policy was issued to Bennett certifying that he was entitled to death benefits (payable to his widow) in the amount of $14,000. According to the certificate, "all benefits are subject to the Group Policy which alone constitutes the agreement under which payments are made."

Subsequently, a rider to this Certificate was issued to him changing the amount of life insurance to $40,000 and at the same time the beneficiaries were changed to Patrick Mulherin and Cecil Barnes who were associated in the Central enterprise. Bennett left the employ of the insured late in 1967 because of ill health. As permitted by the terms of the policy, he converted the group Certificate into ordinary life on February 1, 1968, with a coverage of $40,000 and the first premium was paid. Bennett died on February 23, 1968.

In seeking reformation Prudential asserts that the Certificate in amount of $40,000 was issued to Mr. Bennett on the strength of the representation by Central that his salary exceeded $14,000 per annum.[1] It contends that in the absence of such false representation the Certificate as well as the converted life policy would have been issued in the amount of only $12,000. Plaintiff alleges that Bennett's annual salary was $5,720 and that his annual earnings did not exceed the amount of $14,000 so as to entitle him to maximum coverage.

In the lengthy answers of the defendants and in the cross-claims by the beneficiaries it is contended, among other things, that:

1. The agent and representative of Prudential recommended to the Central people that the group insurance policy should and would contain a provision that Executives, Managers and Officers (Bennett being included in that class) would be entitled to a maximum of $40,000 life insurance and that in purchasing the policy Central and Bennett relied on such representation.

2. When Prudential's authorized agent attempted to deliver a Certificate for $14,000 life insurance to Bennett he refused to accept same; that the agent thereupon acknowledged that Bennett qualified, as an executive, for the maximum coverage, and that, accordingly, a rider was added to the Certificate showing $40,000 as the amount of coverage.

3. Prudential never investigated nor sought information as to the annual earnings of the executives and officers of Central; that no information in that respect was ever given and that if any error was made in calculating the annual earnings of Bennett, it was precipitated by the negligence of the insurer.

4. The schedule of coverage contained in the group policy should be reformed by limiting the earnings requirements therein to employees other than officers and executives so as to provide maximum insurance coverage for the latter.

5. Prudential cannot contest the claim of the beneficiaries to the $40,000 coverage because of the incontestability clause which provides that statements of the policy holder not contained in the application constitute representations

1. The circumstances of this representation, the date thereof, the identity of the person or persons making it and the manner of doing so is not pleaded. To have as complete a record as possible on the pleadings I am going to sustain defendants' motion for a more definite statement in this respect. This footnote will constitute my order in the premises. Let the amendment be presented on or before December 13th.

and not warranties and that after one year the validity of the group policy can be contested only for non-payment of premiums.

The complaint, the answers and the counterclaims have produced numerous motions to strike and to dismiss by the parties. However, two main and distinctive legal threads run through the entire fabric of contention and dispute. They are:

A. Does the incontestable provision of the group policy prevent Prudential from contending that the maximum amount of insurance issuable to Bennett was $12,000 rather than $40,000?

B. Is Prudential estopped to deny the insurance coverage stated in the Certificate (and in the ordinary life policy) because of the alleged representation of its agent concerning maximum coverage for executives, and relatedly, are defendants entitled to reformation of the group policy so as to make it conform to the representation that Central's executives, irrespective of earnings, were entitled to the $40,000 coverage?

## I

My view of the first question is that Washington National Insurance Company v. Burch, 5 Cir., 270 F.2d 300 leaves me no option in dealing with defendants' argument about incontestability. Under that holding the clause in question relates to non-contestability of the group policy itself and is no bar to an insurer, notwithstanding the certificate, contesting the amount of insurance to which the employee is properly entitled. The Court of Appeals for this Circuit held that the incontestable clause was not applicable to the claim of the insurance company that the amount of insurance stated in the certificate is governed by the coverage to which, under the group policy schedule, the actual earnings of the employee entitles him.[2] The Washington National case is analogous in its facts to the present action. The amount of insurance coverage there depended on the number of turpentine cups worked during a given period by a member of a Cooperative as contrasted here with the annual earnings of employees of the insured. The decision of the Fifth Circuit Court of Appeals stands squarely athwart the route of defendants—immovable, insurmountable, unflankable, inexorcisable.

The Georgia Court of Appeals has in principle approved the holding (see National Life & Accident Insurance Company v. Chapman, 106 Ga.App. 375, 127 S.E.2d 157) and similar rulings have been made in both the Fifth and Fourth Circuits as to the effect of the incontestability provision on certificates issued to non-qualified persons. Fisher v. United States Life Insurance Company, 249 F.2d 879 (4th Cir.); Carp v. California-Western States Life Insurance Company, 252 F.2d 337 (5th Cir.).

Despite the amount of space devoted in their brief to the Georgia cases on the general subject of incontestable clauses, I gather defendants' counsel do not seriously dispute the fact that I am bound by the direct holdings that incontestability related to the group policy itself and not to certificates issued thereunder. They point out that, after all, *Washington National* left to a jury the matter of waiver and estoppel raised by the pleadings.[3] * * * They also cite a group insurance case in which the amount of coverage was based on the yearly number of automobile shipments from a manufacturer to a dealer. However, as I read Clauson v. Prudential Insurance Co. of America, D.C., 195 F. Supp. 72, the claim of estoppel in that case grew out of whether or not the manufacturer was the agent of the insurer.

---

2. The converted ordinary life policy would not stand on any higher footing than the Certificate since the group policy controls both the certificate and the conversion into ordinary life.

3. On the subsequent trial of the case (293 F.2d 365) the plaintiff prevailed but the verdict seems to have turned on the question of agency rather than waiver or estoppel.

Of course, the fact remains that in Prudential's complaint (par. 11) it is alleged that Bennett's annual salary was $5720 and the defendants' answers deny as much. We will possibly be able to dispose of this issue on motion for partial summary judgment. I do not intend to let the case go to trial on the bare assertion and denial of the amount of annual earnings in the complaint and answer.

## II

Is the insurer estopped under the circumstances to deny that $40,000 coverage existed in view of the alleged representation of its agent? Do the defendants have the right to reformation of the policy on the basis of his assurance and representation that the graduated earnings schedule in the group policy was inapplicable to executives of Central?

In the "Request for Insurance" by Central the power of an agent to bind the company by representations or promises is disavowed. Further, the group policy stated that only insurer's officers could waive conditions and that no change in the policy would be valid except by endorsement or amendment signed by an officer of Prudential. Plaintiffs rely on these clauses and argue that prior representations merge into or are extinguished by the policy once it is issued. McLemore v. Life Insurance Company of Georgia, 117 Ga.App. 155, 159 S.E.2d 480; Vulcan Life & Acc. Ins. Co. v. United Banking Co., 118 Ga.App. 36, 162 S.E.2d 798; Cotton States Mutual Ins. Co. v. Booth, 116 Ga.App. 410, 157 S.E. 2d 877; Sasser v. Coastal States Life Ins. Co., 113 Ga.App. 17, 147 S.E.2d 5; Allstate Ins. Co. v. Walker, 114 Ga.App. 732, 152 S.E.2d 895; Reserve Life Ins. Co. v. Ramsey, 98 Ga.App. 732, 106 S.E. 2d 820.

Prudential further contends that the claim that defendants did not investigate the contents of the policy is legally meaningless in view of the rule that one who can read must read, absent fraud or emergency. See Cotton States Mutual Insurance Company v. Booth, 116 Ga. App. 410, 412, 157 S.E.2d 877. They point out (Exhibit A of the complaint) that Central's vice-president expressly approved and accepted the terms of the group policy.

Counsel for defendants cite cases where, despite the disclaimer of any power of agents to waive or modify, the doctrine of estoppel was held applicable to insurers. Stillson v. Prudential Insurance Company, 202 Ga. 79, 42 S.E.2d 121; Birmingham Fire Insurance Co. of Pennsylvania v. Commercial Transportation, Inc., 224 Ga. 203, 160 S.E.2d 898. Counsel for Prudential may wish to differentiate these authorities and counsel for defendants may wish further argument at Augusta in the light of what I have said above and am about to say below.

I will be frank. Up to this point I think plaintiff has the better of the argument as to waiver and estoppel. The rule in Georgia (at least, where an insured had possession of the policy) is set forth in Fire & Casualty Insurance Co. of Connecticut v. Fields et al., 212 Ga. 814, 96 S.E.2d 502. There the Supreme Court of Georgia held that there was no estoppel against the insurer relying on the policy requirement of a written waiver on its part as against oral representations concerning the existence of coverage made by an agent who was aware that the premises were unoccupied and despite premiums being knowingly accepted by the insurance company.[4]

I will leave my mind as open as I can but unless strong arguments demonstrate error on my part in these tentative views, I propose to place this case in posture for direct appeal to the Court of Appeals. Perhaps this can be accomplished on a motion for final judgment on the plead-

4. The decision reversed the judgment of the Court of Appeals in 94 Ga.App. 272, 94 S.E.2d 113. A commentator says that the decision below was reached "on the basis of a single case which actually reached a contrary result". Mercer Law Review, Vol. 9 (Fall, 1967) 101 f.

ings following my formal rulings as to the various motions to dismiss, to strike, etc. If I am wrong, I will be corrected on appeal. At least, we will have the advantage of trying the case in light rather than darkness.

### SUPPLEMENTARY OPINION

I think it will be well at this stage to consider exactly where we stand in this litigation at this moment.

My opinion of November 26, 1968, ruled that:

(1) The incontestability clause is not applicable to the Certificate of insurance issued to Thurston H. Bennett.

(2) The claim of waiver and estoppel and right to reformation of the policy raised by defendants on the basis of the alleged misrepresentations by insurer's agent as to coverage, etc., are insufficient in law.

The latter question was argued and decided within the restricted encompassment of traditional legal rules concerning the merger of oral representations into a written contract; limitations on an agent's authority to waive policy conditions or to bind the insurer thereby; and estoppel by acceptance of premiums.

I did not foreclose the defendants from asserting waiver, estoppel or similar defenses based upon facts which the pleadings may not have fully developed. I certainly did not mean to deprive defendants of any reliance upon the Georgia cases to the effect that in the case of a group insurance policy the policy holder (employer) is the *agent of the insurance company* and that knowledge by such employer concerning the employment status of a deceased employee amounts to knowledge by the insurance company. See in this connection: Pilot Life Insurance Company v. McCrary, Executor, 103 Ga.App. 549, 120 S.E.2d 134; Cason v. Aetna Life Insurance Company, 91 Ga.App. 323, 85 S.E.2d 568; Equitable Life Assurance Society v. Florence, 47 Ga.App. 711, 171 S.E. 317; Joiner v. Metropolitan Life

Insurance Co., 40 Ga.App. 740, 151 S.E. 540; Progressive Life Insurance Company v. Bohannon, 74 Ga.App. 617(3), 40 S.E.2d 564.

Perhaps counsel may wish to present briefs covering this phase of the case. It will be some time before I will be in Augusta and a hearing could not be held for several weeks in that Division if oral argument is required.