In the ESTATE OF Jerry N. BEAN,
Deceased, Appellant,

v.

Ernest HAZEL, III, Respondent.

No. 80424.

Supreme Court of Missouri,
En Banc.

July 14, 1998.

Limbaugh, J., issued dissenting opinion in which Robertson and Covington, JJ., concurred.

David L. Hoven, Vincent & Hoven, P.C., Union, for Appellant.

Robert A. Zick, Zick & Voss, P.C., Washington, for Respondent.

HOLSTEIN, Judge.

The estate of Jerry N. Bean (Estate) brought a petition for discovery of assets pursuant to sec. 473.340 [1] against Ernest Hazel, III, seeking to determine the title and right to possession of $120,000 in proceeds

---

1. All references to statutes are to RSMo 1994 unless otherwise noted.

from Bean's life insurance policy. The trial court concluded that Hazel had no duty to make restitution to the Estate and that Hazel held no part of the proceeds of the policy in trust for the Estate. Following opinion by the Missouri Court of Appeals, Eastern District, this Court granted transfer. *Mo. Const. art. V, sec. 10.* The judgment is reversed.

■ This Court will sustain the judgment of the trial court unless the decision was not supported by substantial evidence, it was against the weight of the evidence, or it erroneously declared or applied the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). This case was submitted to the trial court and comes to us on a stipulated statement of facts. Thus, the general rule that we defer to the trial court's superior ability to judge the credibility of the witnesses is not a compelling factor.

■ On July 5, 1990, Bean and Hazel entered into an agreement under which Bean would borrow $120,000 from Hazel. Their agreement was set forth in a signed promissory note. Among other provisions, it stated:

[Bean] shall maintain, during the term of this loan, a life insurance policy on his life, in a form acceptable to [Hazel], naming [Hazel] as beneficiary in an amount not less than the unpaid balance of the promissory note and accrued interest at any time. Proof of the maintenance of said policy by the maker hereof shall be given to [Hazel] upon the written request and at least thirty days prior to the premium due date on the policy. Further, [Bean] shall require said insurance company to notify [Hazel] of any termination, cancellation, amendment of beneficiary, or lapse, or transfer of said policy. Any failure to maintain said policy shall, at the option of [Hazel], cause a default of the terms hereof. . . . Proof of coverage will be given to [Hazel] by the maker at the time of execution of this promissory note. [Bean] will also require the company insuring the life of [Bean] that Notice of Premium Due be given not only to [Bean] but also to [Hazel].

The note was to be repaid in monthly installments of $2,609.09.

Thereafter, on July 26, 1990, Bean executed a change of beneficiary form to an existing $200,000 life insurance policy naming Hazel as beneficiary to the extent of $120,000. A subsequent note for $12,000 was executed on February 17, 1992. Bean made all premium payments on the insurance policy. In addition, Bean made periodic payments on the promissory note so that by the time of his death, the amount owing was $79,795.71. However, Bean did not make any changes in the beneficiary status of Hazel.

The trial court entered judgment in favor of Hazel allowing him to keep the entire $120,000. This appeal followed.

■ The longstanding rule in Missouri is that one must have an insurable interest in a person's life in order to take out a valid policy of insurance on that person's life. *Lakin v. Postal Life & Casualty Ins. Co.,* 316 S.W.2d 542, 549 (Mo.1958). A creditor's insurable interest in the continuing life of the debtor is limited to the amount of the outstanding debt. *Strode v. Meyer Bros. Drug Co.,* 101 Mo.App. 627, 74 S.W. 379, 381 (1903). If a beneficiary insures the life of a person when the beneficiary has no insurable interest, the policy is referred to as a wager life insurance policy. *Id.* See also *Butterworth v. Mississippi Valley Trust Co.,* 362 Mo. 133, 240 S.W.2d 676, 681 (1951). The insurable interest requirement and wager life insurance rules are rooted in public policy. *Butterworth,* 240 S.W.2d at 682.

■ However, it is also a general rule that a person has an insurable interest in his own life. *Lakin,* 316 S.W.2d at 552. Therefore, a person may purchase an insurance policy on his own life and name as beneficiary a person who has no insurable interest in the person's life "provided it not be done by way of cover for a wagering policy." *Id.* This rule permitting free transfer of the beneficial interest is also rooted in public policy. These two rules come into closest conflict where a creditor contracts with a debtor to assign the proceeds of an insurance policy as a means of securing payment of a debt and the proceeds of the policy are disproportionate to the

amount owing on the debt when the insured dies.

While factually different, the legal issues here were addressed by this Court in *Butterworth*. There, the insured and beneficiary of a life insurance policy were close associates, each having a full insurable interest in each other's lives at the time of the assignment of the policy. 240 S.W.2d at 680. The beneficiary then made a gift of the policy to his own family trust for estate planning purposes. *Id.* at 682. These transactions were found to be "wholly free of speculative purpose" and the trust was entitled to the full proceeds of the policy. *Id.* However, the Court in *Butterworth* stopped short of approving contracts for the assignment of a life insurance policy where the contract was merely made to cover up a gambling transaction. "The wager life insurance contract rule ... applies where a policy has been taken out by, and the premiums paid by, a person who has no insurable interest in the life of the insured, or when [the policy] has been assigned for speculative purposes." *Id.*

In *Strode*, like the case at hand, the insured and beneficiary had no relationship other than that of debtor and creditor when the policy was assigned. *Strode*, 74 S.W. at 379. The court determined that the arrangement between the insured and his creditor "was made for the purpose of securing the former's indebtedness to the latter." *Id.* at 380. To the extent of the debt, there was no improper speculative purpose. However, an assignment of proceeds disproportionately large when compared to the debt was deemed an improper speculative purpose. Therefore, the court held that the creditor "acquires the status of beneficiary only as far as is necessary to make him whole, and no further. As to the remainder of the insurance money, he stands as trustee for the estate of the insured." *Id.* at 381 (citations omitted). To hold the assignment of beneficiary valid for the whole proceeds of the policy is to sanction speculative risks on human lives and to "encourage the evils for which wager policies are condemned." *Warnock v. Davis*, 104 U.S. 775, 781, 26 L.Ed. 924 (1881).

In support of his position, Hazel cites several cases from other jurisdictions that have allowed a creditor-beneficiary to recover more than the outstanding debt under an insurance policy on the debtor's life. *Zolintakis v. Orfanos*, 119 F.2d 571 (Tenth Cir. 1941); *American Casualty Co. v. Rose*, 340 F.2d 469 (Tenth Cir.1964); *Graves v. Norred*, 510 So.2d 816 (Ala.1987); *N.Y. Life Ins. Co. v. Baum*, 700 F.2d 928 (Fifth Cir.1983); *Consentino v. William Penn Life Ins. Co. of N.Y.*, 636 N.Y.S.2d 943, 224 A.D.2d 777 (N.Y.A.D. 1996); *Hackney v. Sharp*, 178 Tenn. 310, 157 S.W.2d 827 (1942); *see also Grigsby v. Russell*, 222 U.S. 149, 32 S.Ct. 58, 56 L.Ed. 133 (1911) (applying Tennessee law). However, as Hazel himself points out, other jurisdictions have decided that a creditor can only recover the amount of the outstanding debt despite an insurance policy that states otherwise. *Llewelyn v. Dobson Bros.*, 274 S.C. 177, 262 S.E.2d 726 (1980); *Jimenez v. Protective Life Ins. Co.*, 8 Cal. App.4th 528, 10 Cal.Rptr.2d 326 (1992); *Progressive Life Ins. Co. v. Bohannon*, 74 Ga. App. 617, 40 S.E.2d 564 (1946); *Burnett v. Amicable Life Ins. Co.*, 195 S.W.2d 237 (Tex. App.—Eastland 1946); *Froiland v. Tritle*, 484 N.W.2d 310 (S.D.1992). Equivocal precedent from other jurisdictions is not a compelling reason for overturning precedent of our own courts or for approving the assignment of a policy for a speculative purpose in an amount far in excess of the limited insurable interest of the assignee creditor.

Hazel also attacks the proposition that he holds the excess proceeds in trust for the Estate. Hazel contends that a constructive trust is only proper if he acted fraudulently or breached a confidential or fiduciary relationship. However, "[t]here are numerous situations in which a constructive trust is imposed in the absence of fraud." WILLIAM F. FRATCHER, SCOTT ON TRUSTS sec. 462 (4 th ed.1989). Specifically, "a constructive trust will be imposed where a person wrongfully obtains the proceeds of a life insurance policy as beneficiary of the policy." WILLIAM F. FRATCHER, SCOTT ON TRUSTS sec. 490 (4 th ed.1989); *Strode*, 74 S.W. at 381. Furthermore, it cannot be said that Hazel was a bystander, wholly uninvolved in procuring the assignment. Bean was required to pro-

vide a policy in a "form acceptable" to Hazel. In addition, any failure to maintain the policy, including its beneficiary provisions in a form acceptable to Hazel, would "cause a default" of the promissory note. The contract gave Hazel complete control over both the form of the policy and any subsequent changes in that form. Since Hazel was only entitled to the amount of the debt plus any accrued interest, it was wrongful for him to obtain and claim as his own the remaining proceeds.

■ Finally, one may speculate that Bean's intent was to make a gift of the excess proceeds of the life insurance policy to Hazel. However, there is no pleading, evidence or argument that Bean intended to make a gift. It is generally said that the person claiming the gift has the burden of proving the gift by clear and convincing evidence. *Schultz v. Schultz*, 637 S.W.2d 1, 6 (Mo. banc 1982). The only evidence here is of a creditor-debtor relationship and that Bean's purpose in assigning the policy was to meet the requirement to "maintain life insurance in a form acceptable to" Hazel.‑

The judgment is reversed. The cause is remanded for entry of judgment consistent with this opinion.

BENTON, C.J., and PRICE and WHITE, JJ., concur.

LIMBAUGH, J., dissents in separate opinion filed.

ROBERTSON and COVINGTON, JJ., concur in opinion of LIMBAUGH, J.

LIMBAUGH, Judge, dissenting.

Although I agree with the majority's general statement of the law in this case, I cannot agree with the conclusion that the majority reaches when applying the law to the facts. For that reason, I respectfully dissent.

As the majority recognizes, it has long been the rule in Missouri that one must have an insurable interest in a person's life in order to take out a valid policy of insurance on that person's life. *Lakin v. Postal Life & Cas. Ins. Co.*, 316 S.W.2d 542, 549 (Mo.1958). If a beneficiary takes out a policy of insur-

ance on the life of a person when the beneficiary has no insurable interest in the life of that person, that policy is referred to as a wager life insurance policy and is against public policy. *Butterworth v. Mississippi Valley Trust Co.*, 362 Mo. 133, 240 S.W.2d 676, 681–82 (1951). For this reason, a creditor's ability to insure the life of his debtor is generally limited to the amount of the outstanding debt. *Strode v. Meyer Bros. Drug Co.*, 101 Mo.App. 627, 74 S.W. 379, 381 (1903). However, a person has an insurable interest in his own life and may procure a policy of insurance on his life and name as beneficiary a person who has no insurable interest in his life "provided [that] it not be done by way of cover for a wagering policy." *Lakin*, 316 S.W.2d at 552.

In this case, it is uncontested that the life insurance policy was procured by the insured ("Bean") and not by the beneficiary ("Hazel"). Because Bean had an insurable interest in his own life, the rule against wager life insurance policies normally would not apply, and he was free to name Hazel as a beneficiary regardless of whether Hazel had an insurable interest in Bean's life. Furthermore, the fact that Bean and Hazel were involved in a debtor/creditor relationship generally would not change this result, because the rule against wager life insurance policies only "applies where a policy has been taken out by, and the premiums paid by, a person who has no insurable interest in the life of the insured, or when it has been assigned for speculative purposes." *Butterworth*, 240 S.W.2d at 682.

Apparently, the majority bases its opinion on the assumption that Bean named Hazel as a beneficiary for speculative purposes—as a part of some unstated wager. However, the record simply does not support that conclusion. Bean named Hazel as a beneficiary of $120,000 of the proceeds of a life insurance policy to secure a $120,000 debt that he owed to Hazel. Although Bean chose to name Hazel as the beneficiary of a set amount, Bean was free to have obtained a declining balance policy that would have decreased Hazel's interest as the outstanding debt decreased. In the alternative, Bean could have made subsequent reductions in Hazel's inter-

est as the amount of the outstanding debt decreased. Moreover, nothing in the record indicates that Hazel induced or required Bean to structure the transaction in the manner that he did. In short, while Hazel certainly benefited from Bean's choices regarding the life insurance policy, there is no evidence that Hazel was named as a beneficiary for speculative purposes.

The majority relies heavily on *Strode*, but the facts in *Strode* were significantly different from those in this case. In *Strode*, the debtor owed the creditor $111, and the debtor took out a life insurance policy in which he named the creditor as a beneficiary of proceeds in the amount of $4,950 as security for the debt. *Strode*, 74 S.W. at 379. The premiums were paid by the creditor, rather than the debtor, and a total of $299.40 had been paid at the time of the debtor's death. *Id.* at 379–80. Thus, the creditor invested $299.40 in an insurance policy that supposedly secured a debt of $111, wagering that the payoff of $4,950 would substantially exceed the amount of the investment. Given these facts, it is not surprising that the *Strode* court found evidence of improper speculation in the life of the debtor.

In contrast, the facts in this case indicate that there was no disparity between the amount of the insurance and the amount of the debt at the time Bean named Hazel as a beneficiary under the policy. Furthermore, Bean, the debtor, paid all of the premiums on the policy. Thus, the facts that served as evidence of improper speculation in *Strode* are simply not present in this case.

The only notable similarity between this case and *Strode* is the existence of a disparity between the amount of the outstanding debt at the time of the debtor's death and the amount actually paid under the insurance policy. Nonetheless, this similarity does not warrant a finding of improper speculation in this case. In *Strode*, the gross disproportion between the amount of insurance and the amount of the debt existed from the very beginning and provided convincing evidence that the transaction served as a means for improper speculation. In this case, the difference between the amount of insurance and the amount of the debt was not present when Hazel was named as a beneficiary, but arose solely as a result of the manner in which Bean managed the transaction. Considering that Bean, himself, was responsible for the disparity in this case, it is difficult to see how the disparity could have been the product of improper speculation on the part of Hazel.

In fashioning a remedy, the majority recognizes that "a constructive trust will be imposed where a person wrongfully obtains the proceeds of a life insurance policy as beneficiary of the policy." WILLIAM F. FRATCHER, SCOTT ON TRUSTS sec. 490 (4th ed.1989); *Strode*, 74 S.W. at 381. However, as indicated by the preceding discussion, Hazel did not "wrongfully" obtain proceeds under Bean's insurance policy. The fact that Hazel received insurance proceeds in excess of the amount of Bean's outstanding debt does not, in itself, prove that Hazel engaged in any wrongful conduct.

The majority makes much of the fact that Bean had to provide insurance in a "form acceptable" to Hazel. Presumably, the majority means to imply that Hazel had some undue influence over Bean's actions, though there is no evidence to support this implication. The facts merely indicate that Bean named Hazel as a beneficiary of a set amount of $120,000 and that Hazel apparently found this arrangement acceptable. Had there been any evidence that Bean attempted to limit or decrease Hazel's interest under the policy, but was unable to do so because of Hazel's control over the form of the policy, then Hazel's control would be relevant. But there is absolutely no indication that Hazel took any such action; thus, the majority's focus on Hazel's possible control over the form of the policy is misplaced. In effect, the majority attempts to build a scenario that never happened.

The law of Missouri is clearly designed to prevent speculation in human life. To this end, a beneficiary is prohibited from insuring the life of another person when the beneficiary has no insurable interest in the life of that person. It follows that a beneficiary may be prohibited from obtaining proceeds under a policy taken out by the insured, when that policy is taken out for improper speculative purposes. In this case, there is no evidence

of any conduct that violates the basic policy against speculation in human life. Although Bean was initially required to secure his debt to Hazel by procuring a life insurance policy, he could have reduced Hazel's interest under the policy as the amount of the outstanding debt decreased, and it does not appear that Hazel prevented him from doing so. Indeed, it appears that Hazel received funds in excess of the outstanding debt solely as a result of Bean's voluntary actions. It may very well be that this result was unintentional, that Bean was merely careless in naming Hazel as beneficiary of a set amount and then failing to decrease that amount as the outstanding debt decreased. But the law regarding wager policies is not designed to avoid the unintentional results of an insured's actions; it is designed to avoid speculation in human life. Because I see no evidence of speculation in the facts of this case, I would hold that Hazel is entitled to the full $120,000 he received as beneficiary under the policy taken out by Bean.